******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

LARA C. COURY *v.* STEVEN E. COURY
(AC 35595)

Lavine, Sheldon and Keller, Js.

*Argued May 13—officially released November 17, 2015*

(Appeal from Superior Court, judicial district of Danbury, Gordon, J. [dissolution judgment]; Winslow, J. [motion for modification of unallocated support and alimony].)

*Erich Henry Gaston*, with whom was *Patrick Heeran*, and, on the brief, *Nancy Segore-Freshman*, for the appellant (plaintiff).

*Samuel V. Schoonmaker IV*, with whom, on the brief, was *Wendy Dunne DiChristina*, for the appellee (defendant).

*Opinion*

KELLER, J. The plaintiff, Lara C. Coury, appeals from the judgment of the trial court granting a postdissolution motion filed by the defendant, Steven E. Coury, wherein he requested that the court modify the unallocated support and supplemental bonus alimony awards entered in the judgment of dissolution. The plaintiff claims that the trial court erred by (1) entering an order eliminating her supplemental bonus alimony award and (2) retroactively modifying the unallocated support and supplemental bonus alimony awards. We reverse the judgment in part for two reasons. First, the court erred by retroactively modifying the monthly unallocated support award to a monthly alimony award in a lesser amount without delineating the portion of the unallocated support award that was attributable to child support and limiting its retroactive modification of that amount. Second, the court erred by retroactively modifying the supplemental bonus alimony award. The judgment is affirmed in all other respects.

The following facts and procedural history are relevant here. The parties were married on June 1, 2002, in Rhode Island. They have three minor children. On August 5, 2009, the plaintiff filed for divorce. On January 18, 2011, the trial court, *Gordon, J.*, rendered a judgment of dissolution. Although the court did not attribute fault to either party, it found that the plaintiff's abuse of alcohol and the defendant's controlling behavior, as well as his infidelity, contributed to the breakdown of the parties' marriage.

The court entered a number of orders in the judgment of dissolution. Of import to this appeal are the court's orders concerning the custody of the parties' three minor children and the monthly unallocated support and supplemental bonus alimony awarded to the plaintiff. The court ordered that the parties share joint legal custody of all three of the parties' minor children. In addition, the plaintiff was awarded sole physical custody of all three minor children, contingent on her compliance with the conditions set forth in the judgment pertaining to her mental health, which included a prohibition against consuming alcohol. The court awarded the plaintiff $11,000 per month in unallocated support until June 30, 2019, unless other specified conditions were met that would terminate the award at an earlier date.[1] Furthermore, as a supplemental bonus alimony award, the court awarded to the plaintiff 30 percent of any annual bonus income the defendant earned in excess of his base salary, as it existed at the time of the dissolution, of $300,000.

On October 16, 2011, the defendant filed an ex parte motion seeking modification of the court's custody and visitation orders. In his motion, the defendant alleged that the plaintiff had been arrested for driving under the

influence of alcohol on October 12, 2011. The defendant requested, inter alia, that the court modify the judgment of dissolution and award him physical custody of the parties' three minor children. The court, *Reynolds*, *J.*, granted the motion on October 17, 2011, and, without prejudice, entered an ex parte order that, inter alia, transferred sole physical custody of the parties' three minor children to the defendant, subject to a hearing scheduled to be held at a later date and any other orders that the court entered.

In addition to his ex parte motion for modification, the defendant filed a motion to modify permanently the court's custody and visitation orders. After conducting a hearing on the motion on November 1, 2011, the court, *Winslow*, *J.*, modified the judgment of dissolution and awarded sole physical custody of the parties' minor children to the defendant, although it did not modify the original joint legal custody order. The court further ordered that the plaintiff be precluded from filing a motion to modify the new physical custody order within the six months following the judgment. In addition, the court ordered that the plaintiff's visitation was to be supervised and to occur no fewer than three times per week, but the court did not set a specific schedule of days or hours.[2]

On November 16, 2011, the defendant filed the motion to modify the unallocated support and supplemental bonus alimony awards at issue in this appeal. In support of his motion, he alleged, inter alia, five reasons for the modification: he had sole physical custody of the parties' three minor children; he owed state and federal taxes for the 2009 and 2010 tax years, as well as accountant fees; his current wife had given birth to a child; his current wife's employment had been terminated; and the plaintiff had begun cohabiting with her mother. On the basis of the foregoing allegations, the defendant claimed that a substantial change in circumstances had occurred, and he requested that the court enter orders reducing the unallocated support award and eliminating the supplemental bonus alimony award in its entirety.

For various reasons, proceedings on the defendant's motion to modify did not commence until January, 2013, after the court granted numerous motions for continuance. During the proceedings, the defendant requested that the court, *Winslow*, *J.*, retroactively modify the judgment of dissolution dating back to November 28, 2011. The plaintiff objected to that request, asserting that General Statutes § 46b-86 (a) prohibited the court from retroactively modifying the orders because the defendant had failed to comply with the service of process requirement promulgated by General Statutes § 52-50. In response, the defendant contended that the plaintiff had not filed a motion to dismiss and had participated in all of the proceedings on the motion, thereby effectively waiving any argument concerning improper

service of process. In addressing the issue of retroactivity, Judge Winslow stated that, according to her personal notes, which were never made part of the record, there had been a reservation of retroactivity by the parties to November 28, 2011. The record, however, indicates neither a request on the part of the defendant for a retroactive modification nor any agreement between the parties to such an express reservation at any time between the date the motion was filed and the date the court granted the motion to modify, April 2, 2013.

On April 2, 2013, the court rendered judgment granting the motion to modify. The court, rather than entering a modified unallocated support award, awarded the plaintiff alimony in the amount of $9600 per month, retroactive to January 1, 2012.[3] According to the order, the alimony award would decrease to $7400 per month commencing on May 1, 2013. The court also ordered that, retroactive to January 1, 2012, the defendant was no longer obligated to pay child support to the plaintiff.[4] The court then eliminated the supplemental bonus alimony award in its entirety, retroactive to January 1, 2012. Additionally, to encourage the plaintiff's rehabilitation, the court granted the plaintiff a safe harbor in the amount of $45,000 per year before the defendant could seek further modification of his alimony obligation. The court also ordered that the defendant pay the plaintiff $400 per month, starting on May 1, 2013, on an arrearage of $10,036.37 in unpaid supplemental bonus alimony found past due and owing to the plaintiff. This appeal followed. Additional facts will be set forth as necessary.

I

We first address the plaintiff's claim that the court erred by entering an order eliminating the supplemental bonus alimony award, which entitled her to 30 percent of any bonus income the defendant earned in excess of his former annual base salary of $300,000.[5] Specifically, she asserts that the court improperly based the order on its finding that a substantial change in circumstances had occurred as a result of the transfer of sole physical custody of the parties' three minor children from the plaintiff to the defendant. In addition, she asserts that the court failed to set forth the facts it relied on in support of the order. We disagree.

The following additional facts are relevant here. During the first day of proceedings on the defendant's motion to modify, the court stated the following: "All right. If the issue is the threshold question, whether there's been a substantial change in circumstances since the entry of the judgment, I don't think we need to spend a lot of time on that issue, because the [physical] custody of the three children has changed from the plaintiff to the defendant, making an unallocated order somewhat difficult to swallow. At this point, there has

to be a separation of child support and alimony, without question.

"So, in itself, the existing order, which [the defendant] seeks to modify, has to be changed. There's no question there's been a substantial change in circumstances that requires a change in those support orders. I don't think we need to spend a lot of time, therefore, on that threshold issue of whether or not there's been a substantial change in circumstances. . . . Let's instead address ourselves to what the orders should be, as a result of a motion to modify . . . subsequent to the judgment. So, I'm not so much interest[ed] in it showing a change, as showing what should the orders be."

Then, prior to entering its orders, the court stated the following: "[W]hen there's a motion to modify . . . the first issue is one of substantial change, and the modification, in this case, calls to us to turn [to §] 46b-86. I indicated earlier that I didn't think there was much of an issue here and I think both sides essentially conceded that there have been enough [of a] substantial change so that we get past that issue.[6]

"Of course, the children are primarily residing with [the defendant] and have been since 2011 at a later point in the year. So, the criteria that apply now, and that we're going to look at, are the criteria from [General Statutes §] 46b-82, which is the modification statute. It's actually the basic statute for alimony, but it's also the statute we look back [to] for purposes of alimony [modification].

"[I]t involves not just income, to each party, that is a piece of it. [The criteria also include] the needs of each party and the estate and the standard of living, so to speak, of each party, but, also, such fairly cut and dry matters as the ages of the parties, their health, a matter of no mean significant in this case, by the way, health and an assortment of other issues [including] the length of the marriage [and] cause of the breakdown of the marriage.

"I appreciate that counsel relied upon the court's familiarity with the case and with its circumstances [so] that they didn't feel it necessary to go into every detail. [Y]ou're well aware that I have some background with the case from other aspects of it and relied upon me to incorporate that information, which I have done, and I have considered all of the criteria of [§] 46b-82, as I must."[7] (Footnote added.)

The court proceeded to make explicit findings on the record relevant to its modified orders. The court found that the defendant's gross income was $325,000, that he expected a bonus of $40,000, and that, although the plaintiff was not employed, she recently had begun seeking full-time employment. The court further found that "[t]he reduction of alimony is not meant to be punitive toward [the plaintiff] . . . [b]ut rather to rec-

ognize that [the plaintiff] is in . . . a rehabilitative situation . . . she's now in a rehabilitative alimony mode."

We begin our analysis by setting forth the relevant standard of review and legal principles. "An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. . . . Thus, unless the trial court applied the wrong standard of law, its decision is accorded great deference because the trial court is in an advantageous position to assess the personal factors so significant in domestic relations cases . . . . With respect to the factual predicates for modification of an alimony [or child support] award, our standard of review is clear. . . .

"Appellate review of a trial court's findings of fact is governed by the clearly erroneous standard of review. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . Our deferential standard of review, however, does not extend to the court's interpretation of and application of the law to the facts. It is axiomatic that a matter of law is entitled to plenary review on appeal." (Citation omitted; internal quotation marks omitted.) *Fulton* v. *Fulton*, 156 Conn. App. 739, 744–45, 116 A.3d 311 (2015).

We apply this deferential standard of review "because it reflects the sound policy that the trial court has the unique opportunity to view the parties and their testimony, and is therefore in the best position to assess all of the circumstances . . . including such factors as the demeanor and the attitude of the parties. . . . As pithily stated by Justice Parskey, in matters of this sort our role of necessity is not to work the vineyard but rather to prune the occasional excrescence." (Internal quotation marks omitted.) *Chyung* v. *Chyung*, 86 Conn. App. 665, 668, 862 A.2d 374 (2004), cert. denied, 273 Conn. 904, 868 A.2d 744 (2005), overruled in part on other grounds by *Tanzman* v. *Meurer*, 309 Conn. 105, 117 n.6, 70 A.3d 13 (2013).

"We previously have explained the specific method by which a trial court should proceed with a motion brought pursuant to § 46b-86 (a). When presented with a motion for modification, a court must first determine whether there has been a substantial change in the financial circumstances of one or both of the parties. . . . Second, if the court finds a substantial change in circumstances, it may properly consider the motion and, on the basis of the . . . § 46b-82 criteria, make an order for modification. . . . The court has the author-

ity to issue a modification only if it conforms the order to the distinct and definite changes in the circumstances of the parties. . . . Simply put, before the court may modify an alimony award [or child support order] pursuant to § 46b-86, it must make a threshold finding of a substantial change in circumstances with respect to one of the parties. . . .

"The party seeking the modification has the burden of proving a substantial change in circumstances. . . . To obtain a modification, the moving party must demonstrate that circumstances have changed since the last court order such that it would be unjust or inequitable to hold either party to it. Because the establishment of changed circumstances is a condition precedent to a party's relief, it is pertinent for the trial court to inquire as to what, if any, new circumstance warrants a modification of the existing order. In making such an inquiry, the trial court's discretion is essential. . . . A conclusion that there has been a substantial change in financial circumstances justifying a modification of alimony based only on income is erroneous; rather, the present overall circumstances of the parties must be compared with the circumstances existing at the time of the original award to determine if there has been substantial change." (Citations omitted; internal quotation marks omitted.) *O'Donnell* v. *Bozzuti*, 148 Conn. App. 80, 87–88, 84 A.3d 479 (2014).

A

Under the legal principles we have outlined, prior to eliminating the supplemental bonus alimony award, the court was obligated to find that a substantial change in the postdissolution circumstances of the parties had occurred that warranted modification of the award. On the basis of the record as a whole, despite the five stated reasons in the defendant's motion for modification, the court appeared to ground all of its financial orders, including its elimination of the supplemental bonus alimony award, on its finding that a substantial change in circumstances had occurred as a result of the transfer of sole physical custody of the parties' three minor children from the plaintiff to the defendant. According to the plaintiff, without citation to any authority, such a change in custody can form the basis for a finding that a substantial change in circumstances had occurred for the purpose of modifying a child support award, but it cannot form the basis for that finding for the purpose of modifying an alimony award. The plaintiff argues that a modification of custody in this case would have no bearing on the supplemental bonus alimony order. Consequently, because the change in custody was the only substantial change in circumstances cited by the court in support of its modification of the supplemental bonus alimony award, the plaintiff asserts that the court failed to find an appropriate substantial change in circumstances meriting modification of the

supplemental bonus alimony award. We disagree.

A court has broad discretion in determining whether a substantial change in circumstances has occurred, warranting a modification of alimony or child support orders. See *O'Donnell* v. *Bozzuti*, supra, 148 Conn. App. 87 ("Because the establishment of changed circumstances is a condition precedent to a party's relief, it is pertinent for the trial court to inquire as to what, if any, new circumstance warrants a modification of the existing order. *In making such an inquiry, the trial court's discretion is essential.*" [Emphasis added; internal quotation marks omitted.]). "Modification of an alimony award may be proper where either the needs of the recipient spouse or the financial ability of the obligor spouse to pay alimony have changed since the original award was made, as well as where the financial circumstances of both parties have changed." (Internal quotation marks omitted.) *Gay* v. *Gay*, 70 Conn. App. 772, 782, 800 A.2d 1231 (2002), rev'd in part on other grounds, 266 Conn. 641, 835 A.2d 1 (2003). Contrary to the plaintiff's contention, a change in the physical custody of three minor children, the oldest having been born in 2006, is an appropriate factor for a court to consider when determining whether a substantial change in circumstances has occurred warranting modification of an alimony order. See *Cummock* v. *Cummock*, 188 Conn. 30, 32, 448 A.2d 204 (1982) (noting that loss of child support payments upon transfer of custody constitutes one factor for trial court to consider in determining whether substantial change in circumstances has occurred warranting modification of alimony); *Jacobsen* v. *Jacobsen*, 177 Conn. 259, 266, 413 A.2d 854 (1979) (trial court did not abuse discretion by finding that substantial change in circumstances had occurred warranting modification of alimony where plaintiff was employed, no longer had custody of child, and owned valuable real estate).

Furthermore, we note that "[o]nce a trial court determines that there has been a substantial change in the financial circumstances of one of the parties, the same criteria that determine an initial award of alimony . . . are relevant to the question of modification. . . . By so bifurcating the trial court's inquiry, however, we did not mean to suggest that a trial court's determination of whether a substantial change in circumstances has occurred, and its determination to modify alimony, are two completely separate inquiries. Rather, our bifurcation of the trial court's modification inquiry was meant to reflect that, under our statutes and cases, modification of alimony can be entertained and premised upon a showing of a substantial change in the circumstances of either party to the original dissolution decree. General Statutes § 46b-86. Thus, once the trial court finds a substantial change in circumstances, it can properly consider a motion for modification of alimony. After the evidence introduced in support of the substantial

change in circumstances establishes the threshold predicate for the trial court's ability to entertain a motion for modification, however, it also naturally comes into play in the trial court's structuring of the modification orders." (Citations omitted; internal quotation marks omitted.) *Borkowski* v. *Borkowski*, 228 Conn. 729, 737, 638 A.2d 1060 (1994). Here, the substantially changed circumstance cited by the court in support of its modification was the transfer of sole physical custody of the parties' three minor children from the plaintiff to the defendant. We conclude that it was well within the court's broad discretion to modify the supplemental bonus alimony award on that basis.

B

The plaintiff also claims that the court erred by entering the order eliminating the supplemental bonus alimony award because it did not set forth any findings in support of the order. We disagree. A court need not set forth, on the record, the findings it relied on in entering new financial orders following its conclusion that modification of prior financial orders is warranted. See *O'Donnell* v. *Bozzuti*, supra, 148 Conn. App. 90–91. We recognize the well established presumption that a court has acted correctly when entering its orders, and we will affirm a court's orders if the record contains sufficient evidence to support them. Id., 91.

"After grounds for modification have been shown . . . the trial court is entitled to consider all the factors, as mandated by [§] 46b-82, available in determining the initial award." *Matles* v. *Matles*, 8 Conn. App. 76, 81, 511 A.2d 363 (1986).[8] Here, after determining that a substantial change in circumstances had occurred as a result of the change in custody of the parties' minor children, Judge Winslow explicitly stated that she had considered the § 46b-82 statutory criteria in entering the modified alimony orders, including the order eliminating the supplemental bonus alimony award. These criteria include, inter alia, "the age, health, station, occupation, amount and sources of income, earning capacity, vocational skills, education, employability, estate and needs of each of the parties and the award, if any, which the court may make pursuant to section 46b-81, and, in the case of a parent to whom the custody of minor children has been awarded, the desirability and feasibility of such parent's securing employment." General Statutes § 42b-82 (a). A careful review of the record reveals that the court had sufficient evidence upon which to determine that the change in sole physical custody of the parties' minor children impacted the employability, earning capacity, and needs of the plaintiff, as well as the needs of the defendant and his newly formed household of six persons.

At the time of dissolution, the court, *Gordon, J.*, found that the plaintiff, although capable of finding some form of employment, needed time to "prepare herself for a

good job, one which will sustain her and assist in her ability the help with the children, because, in the long run, the responsibilities of both of these people to the three children they have in this relationship . . . are massive." It is evident from the record that Judge Gordon based her unallocated support award and supplemental bonus alimony award, to some degree, on the plaintiff's need for time to prepare for gainful, suitable employment, as well as on her order awarding the plaintiff sole physical custody of the parties' minor children, which Judge Gordon indicated best served to maintain the children's routine, including being cared for by their stay-at-home mother. Thus, the court's award of unallocated support was influenced by its determination that it was in the best interests of the minor children to remain in the care of their stay-at-home mother for a period of time.

"While [u]nderlying the concept of time limited alimony is the sound policy that such awards may provide an incentive for the spouse receiving support to use diligence in procuring training or skills necessary to attain self-sufficiency and it is thus generally employed for rehabilitative purposes, other reasons may also support this type of alimony award. . . . Such other purposes include providing interim support until a future event occurs that makes such support less necessary or unnecessary." (Citation omitted; internal quotation marks omitted.) *Ashton* v. *Ashton*, 31 Conn. App. 736, 744, 627 A.2d 943, cert. denied, 228 Conn. 901, 634 A.2d 295 (1993). Whether it is desirable for the custodial parent to secure employment because of potential conflicts with child care is one circumstance in which the presence of minor children in the home may properly affect an alimony award. See *Loughlin* v. *Loughlin*, 280 Conn. 632, 654–55, 910 A.2d 963 (2006) (alimony award may account for desirability of custodial parent securing employment); see also *Wolfburg* v. *Wolfburg*, 27 Conn. App. 396, 401–402, 606 A.2d 48 (1992) (allowing wife to provide child with her attention while child was minor constituted valid reason for time limited alimony).

The plaintiff's circumstances changed, however, after her loss of sole physical custody of the minor children in 2011. She no longer had to consider the conflict that arises when returning to work is not economically feasible due to the possibly prohibitive expense of full-time daycare for three young children.[9] The plaintiff testified that she has a bachelor's degree from the University of Delaware, a master's degree in education, and an event planning certificate. She also testified that she had been employed previously as a teacher and that, although she was unemployed at the time of the hearing, she had begun seeking a teaching position in early 2013, applied to receive her teaching credentials in February, 2013, and anticipated gaining a substitute teaching position in the near future. Although Judge

Gordon had found that the plaintiff was not at a point where she could seek employment at the time of the dissolution, Judge Winslow, at the time of the modification hearing, indicated that the plaintiff was "at a point where she feels she can seek retraining and employment and . . . that that is in the works, and she's planning for the future appropriately." She also testified that she was planning to move into a less expensive residence. It is reasonable to infer, on the basis of the evidence in the record, that the plaintiff's loss of custody of the minor children caused her to be more employable than she was at the time of dissolution because the loss of custody provided her with additional time to prepare for and seek gainful employment of the type that might not have been practical for a single mother with sole physical custody of three minor children. In fact, she had taken concrete steps to obtain employment as a teacher or substitute teacher. Consequently, it is also reasonable to infer that she had a higher earning capacity after her loss of custody.[10] Furthermore, it is reasonable to infer that her loss of custody factored into her plan to move into a less expensive residence that was more suitable to her needs, which decreased upon her loss of custody.

Moreover, the evidence indicated that the needs of the defendant also were impacted after he received sole physical custody of the three minor children. The defendant testified that the Internal Revenue Service audited his 2009 and 2010 tax returns in 2011, after the court had rendered the judgment of dissolution, that he owed a significant amount in unpaid taxes for the 2009, 2010, and 2011 tax years. Additionally, he expected a significant tax liability for the 2012 tax year. He also testified that, in 2012, he had sold an investment condominium that had been awarded to him in the judgment of dissolution because he was unable to afford the condominium's mortgage payments. Furthermore, the defendant's financial affidavit indicated that his liabilities totaled $699,783.16, and that he had a negative net weekly wage, as his gross weekly wage from principal employment totaled $6250 and his weekly deductions totaled $7194.14.

It is not surprising that a comparison of the defendant's financial affidavits at the time of the dissolution and at the time of the proceedings on his motion to modify indicated that his children's expenses increased after receiving custody. In addition, it is reasonable to infer that the expenses reasonably connected to the assumption of the full-time care of the minor children negatively impacted the defendant's ability to pay his other extensive financial obligations, and that the totality of the circumstances entitled him to additional financial relief in the form of a reduced alimony obligation. Specifically, the defendant presented evidence that his financial circumstances were dire, and the court acknowledged this, noting, "I accept, at face value, [the

defendant's] financial affidavit, with regard to the huge amounts of debt that he owes." In regard to his dire financial circumstances, the defendant testified that he had borrowed approximately $400,000 from his parents to help support his wife and children. He was solely responsible for five dependents, there being no other household income provided by his second wife.

The tax audit that had been completed subjected him to an approximately $117,000 obligation for back taxes, excluding penalties and interest, for the years 2009 through 2011, and he was attempting to negotiate a payment plan with the Internal Revenue Service. His commuting costs had increased due to his children's schedules and the fact that his new employer, unlike his former employer, did not reimburse him for commuting expenses. His new employer required that he expend his own monies to entertain clients, a practice his prior employer discouraged. His benefits package at his new place of employment, including health insurance that cost $15,000 more annually than his previous employer, which he was required to maintain for the benefit of the children under the terms of the dissolution judgment, was significantly less generous than his prior benefits package. He was having difficulty paying the lease and utilities on the home he rented for himself and the children in Ridgefield, but the cost of relocating, the lack of available homes on the rental market in the children's Ridgefield school district and the restriction in the dissolution order as to relocating out of Ridgefield made a move to less expensive rental premises difficult. In his new place of employment, his bonus income was less likely to be as regular as it had been at his former place of employment. In addition, the defendant requested that the court consider his need to begin to set aside some funds for college expenses for the children, as the dissolution court had reserved jurisdiction for future educational support orders.

Finally, as the court noted, despite the change in custody, the defendant was not seeking a child support order from the plaintiff, and the court indicated that it would not consider entering a child support order in favor of the defendant because the plaintiff had no source of income other than her significant modified gross annual alimony award of $115,200, which was reduced to $88,000 on May 1, 2013. The defendant's modified alimony obligation constituted 35 percent of his annual gross income of $325,000, as found by the court, not including bonus income. All of the foregoing considerations reasonably justified the court's elimination of the supplemental bonus alimony award. Essentially, despite being granted some relief, the defendant still must support himself, his second wife and four children, as well as address his other burdensome financial obligations with what remains of his income after fulfilling his ongoing alimony obligation.

In sum, we conclude that Judge Winslow did not err by failing to set forth the specific facts she relied on when entering the order eliminating the supplemental bonus alimony award. The court had sufficient evidence before it indicating that the change in the physical custody of the parties' minor children impacted the plaintiff's employability, earning capacity, and needs, as well as the defendant's needs. After the ground for modification had been shown due to the change in custody, the trial court was entitled to consider all of the factors mandated by § 46b-82 (a) in determining the defendant's modified alimony obligation. It is well established that a trial court is afforded broad discretion, where a modification is warranted, in fashioning its new award. "A mere difference of opinion or judgment cannot justify our intervention. Nothing short of a conviction that the action of the trial court is one which discloses a clear abuse of discretion can warrant our interference." (Internal quotation marks omitted.) *Gallo* v. *Gallo*, 184 Conn. 36, 44–45, 440 A.2d 782 (1981). Consequently, the trial court did not err in eliminating the supplemental bonus alimony award.

## II

We proceed to address the plaintiff's claim that the court erred by retroactively modifying the unallocated support and supplemental bonus alimony awards. Specifically, she asserts that the defendant failed to comply with § 46b-86 (a), which required the defendant to serve her with his motion to modify via a statutorily authorized officer, pursuant to § 52-50, in order to authorize the court to retroactively modify the prior support orders. We conclude the defendant's failure to serve the plaintiff with his motion to modify in accordance with §§ 46b-86 (a) and 52-50 prohibited the court from retroactively modifying the alimony portion of the unallocated support award, but it did not prevent the court from retroactively modifying the child support portion of the unallocated support award. Accordingly, the court committed error by retroactively modifying the unallocated support award to an alimony award in a lesser amount without delineating the portion of the unallocated support award that was attributable to child support and limiting its retroactive reduction to that amount. Furthermore, the court erred by retroactively modifying the supplemental bonus alimony award.

The following additional facts are relevant here. On November 1, 2011, prior to filing his motion to modify the unallocated support and supplemental bonus alimony awards, the defendant mailed a copy of the motion to the plaintiff. At no point did the defendant comply with the service of process requirement established by § 52-50.

We begin by setting forth the relevant standard of review and legal principles. The plaintiff's claim

requires us to examine statutory language and determine whether the trial court acted in accordance with its statutory authority. "Our deferential standard of review [in domestic relations cases] . . . does not extend to the court's interpretation of and application of the law to the facts. It is axiomatic that a matter of law is entitled to plenary review on appeal." (Internal quotation marks omitted.) *Fulton* v. *Fulton*, supra, 156 Conn. App. 745.

Section 46b-86 (a) provides in relevant part: "No order for periodic payment of permanent alimony or support may be subject to retroactive modification, except that the court may order modification with respect to any period during which there is a pending motion for modification of an alimony or support order from the date of service of notice of such pending motion upon the opposing party pursuant to section 52-50. . . ." Section 52-50 (a) provides in relevant part: "All process shall be directed to a state marshal, a constable or other proper officer authorized by statute, or, subject to the provisions of subsection (b) of this section, to an indifferent person. . . ."

We have held previously that parties must comply strictly with § 46b-86 (a) before a court may determine whether to retroactively modify support orders. In *Shedrick* v. *Shedrick*, 32 Conn. App. 147, 147–48, 627 A.2d 1387 (1993), this court affirmed a trial court's denial of a plaintiff's request to modify an unallocated support order retroactively to the date on which she filed her motion to modify. This court based its judgment on the plaintiff's failure to provide the defendant with proper service of process, as the plaintiff had mailed a copy of her motion to modify to the defendant rather than complying with § 52-50. Id., 151–52.

Although *Shedrick* provides us with guidance in resolving the plaintiff's claim, it is not directly applicable to the unique facts of this case. Here, unlike in *Shedrick*, there was a court order transferring the sole physical custody of the parties' three minor children from the plaintiff to the defendant. The defendant's child support obligation to the plaintiff was suspended by operation of law pursuant to General Statutes § 46b-224[11] when the court transferred sole physical custody of the parties' three minor children to him. Extending *Shedrick* to the facts of this case, and prohibiting the court from retroactively modifying the child support portion of the unallocated support award would conflict with § 46b-224, which requires modification of a child support order, or the child support portion of an unallocated support order, from the moment that a court transfers custody of minor children from a recipient of child support to a payor of child support. See *Tomlinson* v. *Tomlinson*, 305 Conn. 539, 552, 557, 46 A.3d 112 (2012) (noting that § 46b-224 operates to require modification of child support order and holding that

child support portion of unallocated support order was modifiable despite provision in parties' separation agreement prohibiting modification). Therefore, we are confronted with two statutes that appear to be in conflict. *Shedrick* instructs us that, under § 46b-86 (a), retroactive modification of a child support order is impermissible unless the service of process requirement set forth by § 52-50 is satisfied. Section 46b-224, however, mandates modification of a child support order upon a transfer of custody of minor children from a party receiving child support to a party paying child support.

To resolve the apparent tension that exists between these two statutes, we turn to the following well established principles of statutory construction. "The meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. . . ." General Statutes § 1-2z. "[I]n cases in which more than one [statutory provision] is involved, we presume that the legislature intended [those provisions] to be read together to create a harmonious body of law . . . and we construe the [provisions], if possible, to avoid conflict between them. . . . It is a well-settled principle of construction that specific terms covering the given subject matter will prevail over general language of the same or another statute which might otherwise prove controlling. . . . Additionally, [i]f the expressions of legislative will are irreconcilable, the latest prevails . . . ." (Citations omitted; internal quotation marks omitted.) *Tomlinson* v. *Tomlinson*, supra, 305 Conn. 552–53. "[W]e presume that laws are enacted in view of existing relevant statutes . . . [and] we read each statute in a manner that will not thwart its intended purpose or lead to absurd results." (Internal quotation marks omitted.) Id., 554.

Our Supreme Court previously has analyzed the interplay between § 46b-86 (a) and § 46b-224 in *Tomlinson* v. *Tomlinson*, supra, 305 Conn. 539, 541, where the court addressed the issue of whether a provision in the parties' separation agreement that expressly prohibited modification pursuant to the nonmodification clause of § 46b-86 (a) precluded a trial court from modifying the child support portion of an unallocated support order. The court noted that "while § 46b-86 (a) addresses the modification of child support in general, § 46b-224 covers the particular effect of a change in custody on preexisting child support orders." Id., 550. The court continued by stating that "the plain language of § 46b-224 provides that '[w]henever' (1) the trial court orders 'a change or transfer of the guardianship or custody of a child who is the subject of a preexisting support order,' and (2) 'the court makes no finding with respect to such support order,' then the custody order 'shall operate to . . . [s]uspend the support order . . . or . . . modify the payee of the support order . . . .' " (Emphasis added.) Id. "Use of the term 'whenever' indi-

cates that the statute applies every time in which the two specified conditions are met without other restriction. Similarly, the use of the term 'shall' denotes a mandatory term, suggesting that the suspension or redirection of support occurs by operation of law. . . . Together, this language signifies that § 46b-224 is invoked upon satisfaction of the two specified conditions automatically, without reference to any other factor . . . ." (Citation omitted.) Id.

"[Section] 46b-224 clearly addresses the distinct factual scenario of a change in custody. In contrast, the language of § 46b-86 (a) is broad enough to encompass all cases in which a change in the support order is contemplated. Therefore, the more specific language of § 46b-224 prevails over the more general terms of § 46b-86 (a), even though the latter deals with the same overall subject matter. Moreover, because the legislature enacted § 46b-224 after § 46b-86 (a), § 46b-224 represents the more recent expression of the legislative will. To the extent that the application of the specific language of § 46b-224 to suspend or modify a support order that purports to preclude modification appears to conflict with the general language of § 46b-86 (a), we conclude that § 46b-224 must prevail." (Footnote omitted.) Id., 553.

Although the issue before the court in *Tomlinson* involved the nonmodification clause in § 46b-86 (a), its analysis of § 46b-86 (a) and § 46b-224 nonetheless is informative as we resolve the plaintiff's claim. Applying *Tomlinson*'s rationale to the present case leads us to conclude that the retroactive modification language in § 46b-86 (a) is general in nature. In contrast, the language in § 46b-224, which was enacted after § 46b-86 (a), is specific in nature, and expressly requires modification when a court enters an order transferring custody of minor children from a party receiving child support to a party paying child support. The modification mandated under § 46b-224 is not conditioned on compliance with any statutory notice requirement. Therefore, to the extent that § 46b-224 conflicts with the general provision of § 46b-86 (a) precluding retroactive modification of child support unless the service of process requirement in § 52-50 is satisfied, we conclude that § 46b-224 must prevail.

Additionally, the plain language of § 46b-224 does not prohibit the retroactive modification of a child support order. Although the text of § 46b-224 provides that a child support payor's obligation to pay child support is *suspended* once he or she is awarded custody of a minor child from the child support recipient, we find no practical distinction between a suspension and a modification for the purposes of applying § 46b-224. As our Supreme Court noted in *Tomlinson*, "[w]e recognize that a '[s]uspen[sion]' and a 'modif[ication of] the payee' of support under § 46b-224 are, in effect, two

different methods of modifying or altering a support arrangement. See *Grosso* v. *Grosso*, 59 Conn. App. 628, 633, 758 A.2d 367 (2000) (given trial court's broad discretion in deciding motions for modification, term ' "alter," ' as used in § 46b-86 [a] is sufficiently broad to encompass 'suspension' of alimony payments), cert. denied, 254 Conn. 938, 761 A.2d 761 (2000); see also *Eckert* v. *Eckert*, [285 Conn. 687] 695 [941 A.2d 301 (2008)] (rejecting any practical distinction between words 'modification' and 'alteration' as used in § 46b–86 [a]); *Borkowski* v. *Borkowski*, [supra] 228 Conn. [734–35] ('[b]ecause a request for termination of alimony is, in effect, a request for a modification, this court has treated as identical motions to modify and motions to terminate brought under § 46b-86 [a]')." *Tomlinson* v. *Tomlinson*, supra, 305 Conn. 551–52. The court proceeded to state that § 46b-224 permits *modification* of child support. Id., 552. Modification, including retroactive modification, of a child support order upon a change of custody under § 46b-224, comports with the "default rule that child support follows the children, unless the trial court has made a finding that another arrangement is appropriate. This statute indicates that the legislature viewed the provision of custody as the premise underlying the receipt of child support payments; the legislature did not envision that the custodian would be required to pay child support to a person who does not have custody, as well as (in cases in which the obligor obtains custody) expend resources to provide directly for the care and welfare of the child. In fact, under the Child Support and Arrearage Guidelines (guidelines), ' "child support award" ' is defined as 'the entire payment obligation of the *noncustodial* parent. . . .' " (Emphasis in original.) Id., 554. "Although the guidelines set forth a procedure for calculating *both* parents' child support obligation; see [Regs., Conn. State Agencies] § 46b-215a-1 (4); the custodial parent's portion does not become a part of a court order because the amount 'is retained by the custodial parent and is presumed spent on the children.' Id., § 46b-215a-2b (c) (7) (B). Once custody is transferred, however, there is no longer any basis for the presumption that the former custodian is spending his or her share of the support on the children." *Tomlinson* v. *Tomlinson*, supra, 554. For the foregoing reasons, we conclude that the child support portion of the unallocated support award was subject to retroactive modification.

The foregoing considerations are inapposite to the issue of whether the portion of the unallocated support award attributable to alimony, as well as the supplemental bonus alimony award, were subject to retroactive modification.[12] Section 46b-224 solely addresses suspension of child support and has no bearing on alimony. As a result, we follow *Shedrick* and conclude that, under § 46b-86 (a), the court did not have the authority to retroactively modify the alimony portion of the unallo-

cated support award or the supplemental bonus alimony award due to the defendant's failure to provide the plaintiff with proper service of process of his motion to modify in accordance with § 52-50.[13]

The defendant raises three arguments in support of the court's retroactive modification of the unallocated support award and supplemental bonus alimony award that we have not yet addressed at this point of our analysis. First, he argues that the plaintiff should be judicially estopped from raising her claim because she did not object when Judge Winslow stated that, on the basis of her personal notes that were not part of the record, there had been a reservation of retroactivity by the parties. He also notes that the plaintiff did not claim on appeal that Judge Winslow had committed error in making that finding. We are not persuaded. Other than Judge Winslow's comments noting that there had been a reservation of retroactivity by the parties on the basis of her personal notes, the record contains no evidence of any request by the defendant, let alone an agreement between the parties, to set a retroactive date. In the absence of evidence on the record unequivocally showing that the parties agreed to set a retroactive date, we reject the defendant's argument.

Second, he argues that the plaintiff waived or should be equitably estopped from raising her claim because she failed to move for a dismissal or raise a claim based on noncompliance with § 52-50 in her prior motions for a continuance of the hearing on the motion to modify the supplemental bonus alimony award and the unallocated support award. We are not persuaded. "Waiver is the intentional relinquishment of a known right. . . . Waiver need not be express, but may consist of acts or conduct from which a waiver may be implied. . . . In other words, waiver may be inferred from the circumstances if it is reasonable to do so. . . . The party asserting waiver, however, must present evidence such that the court can infer waiver from the circumstances. . . .

"Silence may constitute waiver only where there is a duty to speak or otherwise take action. . . . Temporary forbearance does not constitute waiver, and mere delay does not support a waiver. . . . For an implied waiver to be found through a party's actions, intent must be clearly demonstrated by the surrounding facts and circumstances, and there can be no waiver of a right if the person sought to be charged with waiver says or does nothing inconsistent with an intent to rely upon such right. . . . Waivable rights are not extinguished by inaction alone. Inaction, to be interpreted as intention of waiver, must generally be accompanied by other circumstances, such as unreasonable length of time, evidencing intent. Thus, the failure to object immediately to a party's unlawful act does not constitute the waiver of a right to bring legal action." (Cita-

tions omitted; internal quotation marks omitted.) *Carpender* v. *Sigel*, 142 Conn. App. 379, 388, 67 A.3d 1011 (2013). Here, the defendant has failed to point us to evidence illustrating that the plaintiff waived her claim concerning retroactivity. Furthermore, the plaintiff raised her claim during the proceedings on the defendant's motion to modify. She had no duty to raise that claim prior to those proceedings, and the defendant has failed to prove that the plaintiff, by deciding not to raise that claim at an earlier juncture, intended to waive it. For the foregoing reasons, the defendant's waiver argument fails.

Similarly, we are not persuaded by the defendant's equitable estoppel argument. "Under our well-established law, any claim of estoppel is predicated on proof of two essential elements: the party against whom estoppel is claimed must do or say something calculated or intended to induce another party to believe that certain facts exist and to act on that belief; and the other party must change its position in reliance on those facts, thereby incurring some injury. . . . It is fundamental that a person who claims an estoppel must show that he has exercised due diligence to know the truth, and that he not only did not know the true state of things but also lacked any reasonably available means of acquiring knowledge. . . . Estoppel rests on the misleading conduct of one party to the prejudice of the other. In the absence of prejudice, estoppel does not exist. . . . The party claiming estoppel . . . has the burden of proof." (Citations omitted; internal quotation marks omitted.) *Carpender* v. *Sigel*, supra, 142 Conn. App. 389. Here, the defendant has failed to prove that the plaintiff purposely failed to raise her claim concerning retroactivity to prejudice him. Furthermore, the defendant was the only party with the incentive to ensure retroactivity. He could have served the plaintiff initially with his motion to modify, or predicated his agreement to a continuance on the plaintiff's concurrent agreement that any order be retroactive to a specific date and had any such agreement explicitly noted on the record. He failed to do so. For the foregoing reasons, the defendant's equitable estoppel argument also fails.

Last, he argues that he was not required to abide by the mandate in § 46b-86 (a) that he serve the motion to modify unallocated support and bonus alimony at issue in this appeal in accordance with § 52-50. He claims that he satisfied the notice requirement in § 46b-86 (a) with respect to the motion to modify unallocated support and bonus alimony when he served the plaintiff with his earlier motion to modify custody and visitation in compliance with § 52-50. According to the defendant, his motion to modify unallocated support and bonus alimony complied with § 46b-86 (a) and § 52-50 because he previously had served the plaintiff with his motion to modify custody and visitation. He argues this rendered it unnecessary for him to also serve the motion

to modify unallocated support and bonus alimony in accordance with § 52-50 because the two motions were somehow linked. Upon our review, we conclude that the defendant's argument is meritless because the express terms of the motion to modify custody and visitation would not have reasonably notified the plaintiff that the defendant was likely to file subsequently a motion to modify the unallocated support and supplemental bonus alimony awards.

In summation, the trial court erred by retroactively modifying the unallocated support award to an alimony award of a lesser amount without delineating that portion of the unallocated support award attributable to child support and limiting its retroactive reduction to that amount. The court also erred by retroactively modifying the supplemental bonus alimony award. On remand, the court must vacate: (1) the portion of the modified alimony order that required the defendant to pay to the plaintiff $9600 per month in alimony from January 1, 2012 to April 30, 2013; and (2) the portion of the order eliminating the supplemental bonus alimony award that set the order retroactive to January 1, 2012.

In order to determine the amount of alimony owed by the defendant to the plaintiff from January 1, 2012 to April 30, 2013, the court must calculate the amount of the unallocated support award attributable to child support for that time period and subtract that amount from the total amount of unallocated support due during that time period. *Tomlinson* provides guidance in that endeavor. In *Tomlinson*, the trial court had calculated the amount of the unallocated support attributable to child support on the basis of the parties' financial affidavits and the child support guidelines in effect at the time of parties' dissolution. *Tomlinson* v. *Tomlinson*, supra, 305 Conn. 560. Our Supreme Court addressed the trial court's method of calculating the child support portion of the unallocated support award as follows: "We note that the trial court improperly may have relied solely on the presumptive guidelines amount in calculating the portion [of the unallocated support award] attributable to child support at the time of dissolution. Although there is a rebuttable presumption that the figure arrived at under the guidelines is the proper amount of child support; see General Statutes § 46b-215b (a); the trial court at the original dissolution proceeding . . . had discretion to deviate from such amount upon consideration of factors, such as the coordination of total family support, shared physical custody, extraordinary disparity in parental income and the best interests of the children. Although it is reasonable to conclude that the trial court found that the unallocated order provided adequate support . . . it does not follow necessarily that the child support portion was equivalent to the presumptive guidelines amount."[14] Id., 560–61.

The judgment is reversed only as to the retroactive modification of the supplemental bonus alimony award and as to the retroactive modification of the unallocated support award to an alimony award of a lesser amount without delineating the portion of the unallocated support award attributable to child support and limiting the retroactive modification to that amount, and the case is remanded for further proceedings consistent with this opinion. The judgment is affirmed in all other respects.

In this opinion LAVINE, J., concurred.

[1] Pursuant to the child support guidelines, the court calculated the presumptive amount of child support to be $661 per week. As a result of the unallocated support award, the court deviated from that presumptive amount and decided not to enter a child support order at the time of the judgment of dissolution. The court ordered the defendant to pay the plaintiff child support, however, in accordance with the child support guidelines upon the termination of the unallocated support award. Furthermore, the court awarded the plaintiff $1 in alimony annually from June 30, 2019, until June 30, 2028, unless other specified conditions were met that terminated the award at an earlier date.

[2] On May 4, 2012, after the six month period had elapsed, the plaintiff filed a motion to modify wherein she requested, inter alia, that the court transfer physical custody of the parties' minor children back to her. She alleged that she had maintained her sobriety since November, 2011, and that it was in the best interests of the children for her to regain physical custody of them. On December 14, 2012, the court, *Winslow, J.*, denied her request and the defendant retained sole physical custody of all three minor children. The plaintiff was granted unsupervised visitation, with the visitation schedule gradually increasing to include overnights on alternating weekends, and two weeks of summer vacation. Pursuant to Practice Book § 25-26 (g), the court ordered the plaintiff to file a request for leave of the court to initiate any further motions to modify the custody order for a period of three years to discourage an "ongoing campaign" on the part of the plaintiff to pursue shared or primary physical custody of the children, and to afford stability to them.

[3] Despite seeking retroactivity to November 28, 2011, the defendant has not cross appealed claiming that the court erred by retroactively modifying the unallocated support award and supplemental bonus alimony award to January 1, 2012. The court apparently chose the date of January 1, 2012 because "the issue was joined and hearings [were] scheduled in court from, about, the beginning of the year [in] 2012."

[4] The defendant did not request an order of child support from the plaintiff, and the court did not enter such an order, reasoning that the plaintiff was not employed at the time of the proceedings in the trial court, and the alimony award was her only source of income.

[5] In her appellate brief, the plaintiff does not appear to assert that the court erred by modifying the unallocated support award. Her sole contention in regard to the court's modification of the unallocated support award is that the court improperly modified it retroactively. To the extent that the plaintiff claims that the court committed error by modifying the unallocated support award, we decline to review it due to her failure to brief it adequately. See *Clelford* v. *Bristol*, 150 Conn. App. 229, 233, 90 A.3d 998 (2014).

In addition, the plaintiff mentions, without sufficient factual or legal analysis, that the court failed to "impose meaningful contempt findings" in regard to the defendant's failure to comply with the supplemental bonus alimony order. To the extent that the plaintiff raises a claim regarding contempt orders entered by the court, we decline to review it due to her failure to brief it adequately. See id.

[6] A review of the record reveals that the plaintiff conceded during the proceedings on the defendant's motion to modify that a substantial change in circumstances had occurred warranting a modification of the unallocated support award, particularly, that portion of the unallocated support award attributable to child support, which presumptively amounted to $661 per week under the child support guidelines. See footnote 1 of this opinion. The plaintiff, however, expressly questioned the propriety of modifying the supplemental bonus alimony award solely on the basis of the change in the

physical custody of the parties' three minor children.

[7] General Statutes § 46b-82 (a) provides in relevant part: "At the time of entering the decree, the Superior Court may order either of the parties to pay alimony to the other, in addition to or in lieu of an award pursuant to section 46b-81. . . . In determining whether alimony shall be awarded, and the duration and amount of the award, the court shall consider the evidence presented by each party and shall consider the length of the marriage, the causes for the annulment, dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, earning capacity, vocational skills, education, employability, estate and needs of each of the parties and the award, if any, which the court may make pursuant to section 46b-81, and, in the case of a parent to whom the custody of minor children has been awarded, the desirability and feasibility of such parent's securing employment."

[8] In *Matles*, the defendant filed a motion to modify an unallocated alimony and support order of unlimited duration on the ground that the parties' youngest child had reached the age of majority. *Matles* v. *Matles*, supra, 8 Conn. App. 78. The trial court granted the motion and eliminated the unallocated alimony and support order, issuing instead a two year periodic alimony award that required the defendant to pay the plaintiff nearly half the amount of the prior unallocated alimony and support order. Id., 79. On appeal, this court affirmed the judgment of the trial court, concluding that the modification was warranted upon the parties' youngest child's attainment of the age of majority, and that the court had fashioned the modification appropriately and in accordance with law. See id., 82.

[9] The resolution of this conflict has now shifted to the defendant and his second wife, who are the primary caretakers of four minor children under ten years of age.

[10] As previously stated, the court's order modifying the unallocated support and supplemental bonus alimony awards allowed the plaintiff to collect $9600 per month in alimony until April 30, 2013, when the alimony was reduced to $7400 per month, and also included a safe harbor provision, applicable to the plaintiff, in the amount of $45,000, which further supports the reasonable inference that her earning capacity increased following her loss of custody. The modified alimony obligation secured the plaintiff almost one third of the defendant's monthly gross income, despite the fact that the defendant was the sole source of support for seven individuals, including himself. In addition, the court ordered the defendant to pay the plaintiff $400 per month on an arrearage based on unpaid bonus alimony.

[11] General Statutes § 46b-224 provides: "Whenever the Probate Court, in a guardianship matter under chapter 802h, or the Superior Court, in a family relations matter, as defined in section 46b-1, orders a change or transfer of the guardianship or custody of a child who is the subject of a preexisting support order, and the court makes no finding with respect to such support order, such guardianship or custody order shall operate to: (1) Suspend the support order if guardianship or custody is transferred to the obligor under the support order; or (2) modify the payee of the support order to be the person or entity awarded guardianship or custody of the child by the court, if such person or entity is other than the obligor under the support order."

[12] We recognize that an unallocated support order is a single order. Our Supreme Court in *Tomlinson*, however, held that a trial court can modify the child support portion of an unallocated support order that is subject to a clause prohibiting modification while leaving the alimony portion intact. *Tomlinson* v. *Tomlinson*, supra, 305 Conn. 558. In a similar respect, we conclude, under the circumstances of this case, that the child support portion of the unallocated support award is subject to retroactive modification while the alimony portion is not.

[13] The plaintiff also claims that the court's error in retroactively modifying the unallocated support award and supplemental bonus alimony award constituted a violation of her constitutional due process rights. Because we conclude that the court erred by retroactively modifying the unallocated support award and the supplemental bonus alimony award on statutory grounds, we need not reach the plaintiff's constitutional claim. See *State* v. *Turner*, 91 Conn. App. 17, 24 n.11, 879 A.2d 471 (declining to reach constitutional claim due to resolution of issue on nonconstitutional grounds), cert. denied, 276 Conn. 910, 886 A.2d 424 (2005).

[14] We note that the factual and procedural circumstances of the present case are not identical to those in *Tomlinson*. Nonetheless, we cite *Tomlinson* to guide the trial court in its calculation of the portion of the unallocated support award attributable to child support. The court may consider the

presumptive guidelines in effect at the time of dissolution in calculating the portion of the unallocated support award attributable to child support, but it is not necessarily bound to apply the presumptive amount should it find reason to deviate upwards or downwards upon consideration of other factors.