TADEUSZ KALINOWSKI *v.* WANDA KROPELNICKI
(AC 25126)

Dranginis, Gruendel and Peters, Js.

---

Argued September 12—officially released November 22, 2005

*Anthony E. Parent*, with whom, on the brief, was *Ramero Alcazar*, for the appellant (defendant).

*Joel M. Ellis*, with whom, on the brief, was *Alan J. Rome*, for the appellee (plaintiff).

GRUENDEL, J. The defendant, Wanda Kropelnicki, appeals from the judgment of the trial court rendered on January 29, 2004, in connection with her November 7, 2003 motion for reconsideration and in connection with a motion for contempt filed by the plaintiff, Tadeusz Kalinowski, on December 4, 2003.[1] On appeal, the defendant claims that the court improperly (1) found that under a 1990 support order, she was required to pay to the plaintiff $6381.37 in unpaid medical expenses for the parties' minor child and (2) denied her special defenses of laches, res judicata, equitable estoppel and waiver. We agree in part with the defendant's first claim and, accordingly, reverse the judgment in part and remand the case to the trial court with direction to recalculate expenses owed by the defendant in accordance with the original court order dated December 31, 1990. We disagree with the defendant's second claim and affirm the judgment as to those issues.

The following facts and procedural history are relevant to the defendant's appeal. The plaintiff and the defendant are the unmarried parents of their daughter, Kasia, born in 1985. On September 1, 1989, the court awarded custody of Kasia to the plaintiff. No order of support was issued against the defendant, who retained limited visitation rights.

On December 20, 1990, the plaintiff filed a motion to terminate visitation, citing the defendant's alleged intoxication during prior visits with Kasia. In response to that motion, on December 31, 1990, the court ordered both parties to attend therapy sessions with Linda Wazniak of Catholic Family Services. The order further specified: "Each party will be responsible for paying

---

[1] The defendant also claimed that the court improperly denied her motion for setoff in its January, 2004 judgment, but the defendant has abandoned that claim.

for his or her own sessions (with or without Kasia) and shall divide evenly the cost of any joint sessions or sessions with Kasia alone."

On August 4, 2003, the plaintiff filed a motion for contempt, claiming that the defendant had not reimbursed him for (1) therapy costs involving their daughter pursuant to the December 31, 1990 court order and (2) medical expenses pursuant to further court orders.[2] In sum, the plaintiff alleged that the defendant owed him $6381.37 for unreimbursed "medical expenses." In support of that figure, the plaintiff attached a list of the alleged unreimbursed medical expenses from November 4, 1991 to June 3, 2003.

At the October 20, 2003 hearing on the plaintiff's motion for contempt, the court did not find the defendant in contempt, but found an arrearage of $6381.37 owed by the defendant to the plaintiff for one half of unreimbursed medical expenses. Pursuant to an agreement between the parties entered into after the court's determination of the arrearage, the total amount was ordered payable in monthly installments of $122.72 beginning on October 31, 2003.[3] The court also ordered the defendant to provide full financial disclosure to the plaintiff by November 24, 2003.

On November 7, 2003, the defendant filed a motion to reconsider the amount of the total unreimbursed

---

[2] On January 6, 1994, in response to the plaintiff's application for a contempt order and wage withholding, a family support magistrate, *Harris T. Lifshitz*, ordered the parties to "file claims for unreimbursed medical expenses." That order, notably, did not order payment of those claims.

[3] The defendant did not stipulate that the $6381.37 amount in the agreement was money that she owed to the plaintiff. Rather, the defendant stipulated that the $6381.37 amount was equal to one half of the value of all medical bills that she had received from the plaintiff. The defendant thus acknowledged and agreed to pay the order, but did not stipulate that $6381.37 was the correct amount. Had the parties made such a stipulation, the court's judgment could not be opened absent fraud, mistake or accident. *Gillis* v. *Gillis*, 214 Conn. 336, 339–40, 572 A.2d 323 (1990) (stipulated judgment not an adjudication by court, but contract entered into by parties).

medical expenses and a motion for a setoff.[4] Also on November 7, 2003, the plaintiff filed a motion for contempt after the defendant failed to make the first monthly payment.[5] The plaintiff filed another motion for contempt on December 4, 2003, after the defendant failed to provide a timely full financial disclosure.[6] The motion further alleged that the defendant had failed to reimburse the plaintiff for medical expenses pursuant to the October 20, 2003 court order.

On January 29, 2004, the court found the defendant in contempt for failing to provide the financial disclosure in a timely manner and ordered her to pay $500 in attorney's fees, payable in ten equal monthly installments. The court also denied the defendant's motions for setoff and reconsideration. On February 17, 2004, the defendant appealed from the court's judgment.

I

The defendant first claims that the court improperly found that her total arrearage was $6381.37.[7] Specifically, she argues that the court miscalculated the arrearage because the court retroactively modified the 1990 court order that limited expenses to therapy sessions alone. Our resolution of the issue, therefore, turns on whether the October 20, 2003 order modified or merely enforced any prior court orders of support.

[4] In the motion for setoff, the defendant alleged that she was entitled to a setoff of the unreimbursed medical expenses in an amount of $2500, in accordance with an unrelated judgment rendered in an action for damages brought by the defendant against the plaintiff.

[5] On November 24, 2003, the court found the defendant in contempt and ordered her committed to the custody of the commissioner of correction with a review date of December 8, 2003, and a purge amount of $367.16 (three monthly installments). The court also ordered her to make full financial disclosure to the plaintiff by December 1, 2003.

[6] The defendant filed a full financial disclosure on December 8, 2003.

[7] The defendant's appeal form states that the appeal is from the ruling on "Motion for Set-off, Motion for Contempt." Because the defendant did not raise an issue as to or otherwise brief or argue the court's January 29, 2004 finding of contempt, it is not an issue before us.

We note the standard of review. "An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action." (Internal quotation marks omitted.) *Smith* v. *Smith*, 249 Conn. 265, 282–83, 752 A.2d 1023 (1999).

A modification is "[a] change; an alteration or amendment which introduces new elements into the details, or cancels some of them, but leaves the general purpose and effect of the subject-matter intact." (Internal quotation marks omitted.) *Jaser* v. *Jaser*, 37 Conn. App. 194, 202, 655 A.2d 790 (1995). When determining whether a new order is a modification, we examine the practical effect of the ruling on the original order. Id.

The record shows that the original financial order of the court was entered on December 31, 1990. Specifically, the order required that "[e]ach party will be responsible for paying for his or her own sessions (with or without Kasia) and shall divide evenly the cost of any joint sessions or sessions with Kasia alone." The order did not specify or refer to any other medical expenses of Kasia. On October 20, 2003, at the hearing on plaintiff's motion for contempt, the court found an arrearage of $6381.37 owed by the defendant for one half of unreimbursed "medical expenses." A review of the finding, however, reveals that this figure included both therapy sessions and other medical expenses, such as eyeglasses, medicine and dental visits for Kasia.[8] We conclude that the court altered the terms of the original

---

[8] The court based its $6381.37 amount on exhibit A of the plaintiff's motion for contempt, which listed the alleged unreimbursed medical expenses from November 4, 1991, to June 3, 2003.

order because the $6381.37 amount included medical expenses not encompassed in the original order, which was limited to therapy expenses.

General Statutes § 46b-86 requires that a party file a motion showing a substantial change in circumstances in order to modify a final order of support.[9] Because neither party filed a motion to modify the initial support order of December 31, 1990, we agree with the defendant that the court's October 20, 2003 finding that she reimburse the plaintiff for one half of the outstanding medical expenses exceeded the initial order.

In his brief, the plaintiff agues that the 2003 order was correct because the defendant has a common-law duty to support her minor child. Indeed, we agree that the defendant has such a duty to support her minor child. "The defendant's duty to support . . . is a continuing obligation, which ordinarily exists even apart from any judgment or decree of support." (Internal quotation marks omitted.) *Atlas Garage & Custom Builders, Inc.* v. *Hurley*, 167 Conn. 248, 255, 355 A.2d 286 (1974); see also *Pezas* v. *Pezas*, 151 Conn. 611, 617, 201 A.2d 192 (1964). "A parent has both a statutory and common law duty to support his minor children within the reasonable limits of his ability." *Weisbaum* v. *Weisbaum*, 2 Conn. App. 270, 272–73, 477 A.2d 690 (1984). We do not agree, however, that the plaintiff can invoke that duty in the context of a motion for contempt.

A motion for contempt addresses only whether a party has violated a particular court order. It does not

---

[9] General Statutes § 46b-86 (a) provides in relevant part that "any final order for the periodic payment of permanent alimony or support or an order for alimony or support pendente lite may at any time thereafter be continued, set aside, altered or modified by said court upon a showing of a substantial change in the circumstances of either party or upon a showing that the final order for child support substantially deviates from the child support guidelines established pursuant to section 46b-215a, unless there was a specific finding on the record that the application of the guidelines would be inequitable or inappropriate. . . ."

address what that particular court order should be. Here, the plaintiff filed a motion for contempt on August 4, 2003, claiming, among other things, that the defendant had failed to reimburse him for "medical expenses" that he alleged had been the subject of prior court orders. No such orders existed. Accordingly, the court improperly ordered payment of medical expenses other than those provided for in the initial December 31, 1990 order. The court's finding arose in the context of a motion for contempt and not a motion for order that the defendant pay all unreimbursed medical bills. We thus find the plaintiff's argument that the defendant be ordered to fulfill her legal duty to provide child support misplaced and unpersuasive.

We therefore reverse the court's judgment finding $6381.37 in arrearage and remand the case to the trial court with direction to recalculate the arrearage in compliance with the December 31, 1990 court order, which limits expenses to therapy sessions.[10]

## II

The defendant next claims that the court improperly concluded that she had failed to prove that the plaintiff's claim for arrearages was barred by at least one of the following four defenses: Laches, res judicata, equitable estoppel and waiver. We disagree.

The following additional facts are necessary to resolve the defendant's claim. On October 14, 2003, the defendant filed an objection to the plaintiff's motion for contempt, claiming laches, res judicata, equitable estoppel and waiver as special defenses, all of which the court found unpersuasive. On November 7, 2003,

---

[10] The December 31, 1990 order specified that the parties equally divide and pay therapy expenses of their daughter, Kasia. The order specified that a particular therapist be paid, but the defendant acknowledged in oral argument a duty to pay one half of all subsequent mental health therapists, whether or not they were specifically named.

the defendant filed a motion to reconsider and reclaimed the defense of laches. On January 29, 2004, the court denied the motion to reconsider. Finally, in its articulation on June 15, 2004, the court noted that the defendant's claims of laches, res judicata, equitable estoppel and waiver were unsupported pursuant to its review of the file.

A

We turn first to the defendant's claim of laches. "Laches consists of an inexcusable delay which prejudices the defendant. . . . First, there must have been a delay that was inexcusable, and, second, that delay must have prejudiced the defendant." (Citation omitted; internal quotation marks omitted.) *Farmers & Mechanics Savings Bank* v. *Sullivan*, 216 Conn. 341, 350, 579 A.2d 1054 (1990). A determination that a plaintiff has been guilty of laches is one of fact for the trier and not one that can be made by this court, unless the subordinate facts found make such a determination inevitable as a matter of law. *Bozzi* v. *Bozzi*, 177 Conn. 232, 240, 413 A.2d 834 (1979).

Even if we assume that the plaintiff delayed in filing his claim for arrearages and that the delay was inexcusable, the court found that there was no prejudice to the defendant sufficient to apply the doctrine of laches. Furthermore, the defendant has not presented to this court facts that would make a conclusion that the plaintiff was guilty of laches inevitable as a matter of law. We therefore conclude that the evidence is sufficient to support the court's conclusion that the defendant failed to prove laches.

B

The defendant also claims that the plaintiff impliedly waived his right to bring a claim for arrearages. "Waiver is the intentional relinquishment of a known right. . . .

Waiver need not be express, but may consist of acts or conduct from which a waiver may be implied. . . . In other words, waiver may be inferred from the circumstances if it is reasonable to do so." (Citations omitted; internal quotation marks omitted.) *Wadia Enterprises, Inc.* v. *Hirschfeld*, 224 Conn. 240, 251–52, 618 A.2d 506 (1992).

In the present case, the court in its articulation found that there was no waiver on the part of the plaintiff. Furthermore, little if any evidence of waiver was presented at the contempt hearing. On that basis, we conclude that it would not have been reasonable for the court to infer waiver from the circumstances. Accordingly, the evidence is sufficient to support the court's conclusion that the defendant failed to prove waiver.

C

Third, the defendant claims that the plaintiff was equitably estopped from bringing his second motion for contempt. "Under our well-established law, any claim of estoppel is predicated on proof of two essential elements: the party against whom estoppel is claimed must do or say something calculated or intended to induce another party to believe that certain facts exist and to act on that belief; and the other party must change its position in reliance on those facts, thereby incurring some injury. . . . It is fundamental that a person who claims an estoppel must show that he has exercised due diligence to know the truth, and that he not only did not know the true state of things but also lacked any reasonably available means of acquiring knowledge." (Citations omitted; internal quotation marks omitted.) *Connecticut National Bank* v. *Voog*, 233 Conn. 352, 366–67, 659 A.2d 172 (1995).

In the present case, the court in its articulation found that there was no credence to the defendant's claim of equitable estoppel. Furthermore, neither party pre-

sented evidence at the contempt hearing indicating that the plaintiff had done or said something with the intent of inducing the defendant to believe that she was complying with the support order. Accordingly, we conclude that the court correctly determined that the defendant failed to prove equitable estoppel.

D

Fourth, the defendant appears to claim that prior orders of the court did not require her to pay unreimbursed medical expenses and, therefore, res judicata bars the plaintiff's claim. "The [doctrine] of res judicata . . . . protect[s] the finality of judicial determinations, conserve[s] the time of the court, and prevent[s] wasteful relitigation. Res judicata or claim preclusion prevents a litigant from reasserting a claim that has already been decided on the merits." (Internal quotation marks omitted.) *Daoust* v. *McWilliams*, 49 Conn. App. 715, 723, 716 A.2d 922 (1998).

In the present case, the prior orders of the court clearly required the defendant to pay her share of her daughter's therapy costs. Furthermore, the court found that there was nothing in the record that supported the defendant's claim of res judicata. Accordingly, we conclude that the court correctly determined that the defendant failed to prove res judicata as a defense.

The judgment is reversed only as to the calculation of the arrearage owed by the defendant and the case is remanded with direction to recalculate expenses owed by the defendant in accordance with the court order dated December 31, 1990. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.