## ANNE CARPENDER *v.* KENNETH G. SIGEL
### (AC 34138)

Beach, Robinson and Alvord, Js.

---

Submitted on briefs October 12, 2012—officially released May 7, 2013

*Bruce A. Chamberlain* filed a brief for the appellant (defendant).

*Raymond C. Lubus* filed a brief for the appellee (plaintiff).

*Opinion*

ROBINSON, J. The defendant, Kenneth G. Sigel, appeals from the judgment of the trial court denying his motion for contempt against the plaintiff, Anne Carpender, for her failure to pay educational and extracurricular activities expenses for their minor son. On appeal, the defendant claims, inter alia, that the court erred in finding that (1) the plaintiff's withholding of consent to pay for college expenses was reasonable, and (2) laches, waiver and estoppel applied to the reimbursement of extracurricular activities expenses for the child.[1] We affirm, in part, and reverse, in part, the judgment of the trial court.[2]

The following undisputed facts and procedural history are relevant to this appeal. The defendant and plaintiff were married on April 7, 1991. One son was born of the marriage. The marriage was dissolved on November 21, 2001, due to an irretrievable breakdown of the marriage. As part of the judgment of dissolution, the court incorporated the separation agreement of the parties. The agreement provided in relevant part: "(a)

---

[1] In his reply brief to this court, the defendant also claims that the trial court improperly considered the defenses of laches, waiver and estoppel because they were never pleaded or argued by the plaintiff. We cannot reach this issue because it was raised for the first time in a reply brief. "[I]t is well settled that new claims cannot be raised for the first time in a reply brief." *Histen* v. *Histen*, 98 Conn. App. 729, 737 n.7, 911 A.2d 348 (2006).

[2] Because we determine that the court did not err in finding that the plaintiff's withholding of consent was not unreasonable and, accordingly, affirm its judgment in part on this ground, we do not reach the defendant's claim that the court improperly found that he was estopped and had waived his right to seek reimbursement for college expenses by modifying the separation agreement in an e-mail to the plaintiff.

Based upon the . . . parenting plan the parties are deviating from the child support guidelines . . . . That deviation is based on the following: . . . (ii) Agreement by the parties to be equally responsible for the following education expenses for the child: Private Secondary Education; College; Graduate School; and Professional School; (iii) The parties' further agreement to be equally responsible for the following expenses of the minor child including, but not limited to: All sports, music, extracurricular programs; Any camp, daycare, after school programs; and Sports Equipment. . . . (c) The party enrolling any child in a school or an activity under 'ii' or 'iii' shall be solely responsible for the cost of the school or activity and any related equipment unless the other party agrees that expenses should be incurred for that particular school or activity. Neither party shall unreasonably withhold his or her consent . . . ."

On September 19, 2011, the defendant filed a post-judgment motion for contempt requesting that the plaintiff be held in contempt for her failure to comply with the payment of educational and other expenses. Following a November 7, 2011 hearing, the court issued a memorandum of decision, finding that the plaintiff did not unreasonably withhold her consent to the child attending college at Long Island University and, thus, was not responsible for the college expenses, that the defendant had waived his right to seek reimbursement for the college expenses and was estopped from doing so, and that laches, waiver and estoppel barred the defendant's claim for the extracurricular activities expenses.[3] This appeal followed.

---

[3] The extracurricular activities that the court considered were the New York Film Academy, Bucks Rock Performing and Creative Arts Camp and middle school programs from 2006–2008, as well as Project Exploration, Avery Point Project Oceanology Camp, Mystic Seaport sailing camp, and the Camp Fuller scuba program, which occurred in 2004, approximately seven to eight years prior to the filing of the motion for contempt.

I

With respect to the college expenses, the defendant claims that the court improperly found that the plaintiff did not unreasonably withhold her consent. We are not persuaded.

"An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action." (Internal quotation marks omitted.) *Morris* v. *Morris*, 262 Conn. 299, 305, 811 A.2d 1283 (2003). "We apply that standard of review because it reflects the sound policy that the trial court has the unique opportunity to view the parties and their testimony, and is therefore in the best position to assess all of the circumstances surrounding a dissolution action, including such factors as the demeanor and the attitude of the parties." (Internal quotation marks omitted.) *Dombrowski* v. *Noyes-Dombrowski*, 273 Conn. 127, 132, 869 A.2d 164 (2005).

The court heard testimony and received evidence regarding why and when the plaintiff objected to paying for their son's college expenses. She testified that the defendant had agreed to pay for their son's education on several occasions both in writing and by e-mails. Two e-mails from 2008 and 2011 from the plaintiff to the defendant were entered into evidence that reiterated the plaintiff's belief that the defendant had agreed to pay for their son's college expenses. Another e-mail in 2009 from the defendant to the plaintiff was entered into evidence where the defendant offered to pay for all of their son's schooling, including college, if the son attended Cheshire Academy.

The plaintiff also recounted a conversation that had taken place between the parties in February or March, 2011, when their son had surgery. During lunch, the plaintiff testified, she told the defendant that she did not think that their son was ready for college but that she had not been involved in the college selection process. The defendant reassured her that he would handle everything. On the basis of that conversation, she testified, the plaintiff expected that the defendant would pay for their son's college expenses.

The plaintiff additionally testified that she did not agree to Long Island University because their son was not a good student and he would do the least amount of work possible. In e-mails in 2011, the plaintiff identified Hofstra University and Norwalk Community College as options for their son. Also submitted into evidence was a copy of their son's official high school transcript.

Moreover, the plaintiff testified, she did not know that their son had been accepted and was ready to attend Long Island University until after he had been accepted. When she learned that their son had been admitted to Long Island University and that the defendant wanted payment for tuition, the plaintiff promptly voiced her disagreement.

The defendant also testified about his expectations about reimbursement for their son's college expenses. He testified that he offered to pay for all of their son's college expenses only if he attended and graduated from Cheshire Academy or some other boarding school, and only that one time. According to the defendant, their son never went to boarding school, so the offer was never accepted. When their son was accepted to Long Island University and no longer living with the plaintiff, the defendant testified, he sought the reimbursement to which he felt he was entitled.

In its memorandum of decision, the court found that the defendant had enrolled the son in college. It further found that the plaintiff was aware that the defendant was enrolling their son in Long Island University and that she did not agree with this decision because she thought he should go to a different school. The court, therefore, concluded that the plaintiff's undisputed refusal to provide consent to their son's choice of school because she felt he should go to a different school was not unreasonable. Upon an order for articulation by this court, the trial court further articulated its factual findings, stating: "The plaintiff did not agree with the decision of [their son] to attend Long Island University. [Their son] was not a good student in the period of February-March, 2011. The plaintiff, therefore, believed [their son] was not ready to attend Long Island University. She felt [their son] should attend Norwalk Community College and was willing to help financially for him to attend Norwalk Community College."

On the basis of the record provided, we cannot determine that there was error in the court's judgment. There was evidence in the record to support the court's factual findings that the plaintiff did not believe that the parties' son was ready to attend Long Island University, that he was not a good student and that a different school would be better. Given the evidence, the court had a reasonable basis on which to conclude that the plaintiff did not unreasonably withhold her consent to their son's enrollment at Long Island University, and, therefore, there was no abuse of discretion.

II

The defendant also claims that the court improperly found that laches, waiver and estoppel applied to the reimbursement of extracurricular activities expenses. He argues that the plaintiff did not present evidence to satisfy all of the elements of these doctrines. We agree.

At the hearing, the court inquired into the dates of some of the extracurricular activities, particularly, Project Exploration, Avery Point Project Oceanology Camp, Mystic Seaport sailing camp, and the Camp Fuller scuba program. After learning that the parties' son had participated in them seven to eight years prior to the filing of the motion for contempt, the court concluded that the claims for those expenses were waived. In its memorandum of decision, the court summarily concluded with respect to the defendant's claim that the plaintiff is responsible to reimburse him for their son's extracurricular activities expenses in accordance with the separation agreement "that based on laches, waiver and estoppel . . . the remaining claims of the defendant are barred." The court made no factual findings with regard to its legal conclusions. The parties, however, testified about the circumstances surrounding their son's enrollment in various after school and summer activities. Specifically, both parties testified that the defendant enrolled their son in various activities, with the plaintiff's consent, that the defendant paid for the activities in full and that the defendant did not seek contribution for the activities until he filed the motion for contempt in 2011.

We begin with the standard of review. "When . . . the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *Jungnelius* v. *Jungnelius*, 133 Conn. App. 250, 254, 35 A.3d 359 (2012).

Laches "bars [a party] from seeking equitable relief in a case in which there has been an inexcusable delay that has prejudiced the [opposing party]. First, there must have been a delay that was inexcusable, and, second, that delay must have prejudiced the [opposing party]. . . . The mere lapse of time does not constitute

laches . . . unless it results in prejudice to the [opposing party] . . . as where, for example, the [opposing party] is led to change his position with respect to the matter in question." (Citations omitted, internal quotation marks omitted.) *Fromm* v. *Fromm*, 108 Conn. App. 376, 385–86, 948 A.2d 328 (2008). Thus, even if there was an inexcusable delay by the moving party, the court will not find that party guilty of laches if the prejudice to the opposing party was not the result of the moving party. See, e.g., *Papcun* v. *Papcun*, 181 Conn. 618, 621, 436 A.2d 282 (1980) (nine year delay not laches where defendant's decision to remarry and incur debts not due to plaintiff's inaction); *Bozzi* v. *Bozzi*, 177 Conn. 232, 240, 413 A.2d 834 (1979) (no laches after eight year delay where no evidence that defendant changed his position in reliance on abandonment by plaintiff of her claim against him); *Kurzatkowski* v. *Kurzatkowski*, 142 Conn. 680, 685, 116 A.2d 906 (1955) (declining to discuss whether lapse of twenty-five years before commencement of action was inexcusable where no finding that delay prejudiced defendant). Moreover, "[t]he burden is on the party alleging laches to establish that defense." *Burrier* v. *Burrier*, 59 Conn. App. 593, 596, 758 A.2d 373 (2000).

In the present case, no evidence was admitted on which the court could have found that the plaintiff was prejudiced by the defendant's failure to seek payment for a number of years or that she changed her position in reliance on the defendant's actions. Further, no evidence was presented that the delay was inexcusable. The only evidence presented to the court with regard to the laches defense was that the defendant waited for seven to eight years to file the motion for contempt. Accordingly, the court improperly concluded that the defendant's claim for reimbursement for extracurricular activities expenses was barred by laches.

"Waiver is the intentional relinquishment of a known right. . . . Waiver need not be express, but may consist of acts or conduct from which a waiver may be implied. . . . In other words, waiver may be inferred from the circumstances if it is reasonable to do so." (Internal quotation marks omitted.) *Kalinowski* v. *Kropelnicki*, 92 Conn. App. 344, 352–53, 885 A.2d 194 (2005). The party asserting waiver, however, must present evidence such that the court can infer waiver from the circumstances. See id., 353.

"Silence may constitute waiver only where there is a duty to speak or otherwise take action. . . . Temporary forbearance does not constitute waiver, and mere delay does not support a waiver." 31 C.J.S. 419, Estoppel and Waiver § 89 (2008). "For an implied waiver to be found through a party's actions, intent must be clearly demonstrated by the surrounding facts and circumstances, and there can be no waiver of a right if the person sought to be charged with waiver says or does nothing inconsistent with an intent to rely upon such right. . . . Waivable rights are not extinguished by inaction alone. Inaction, to be interpreted as intention of waiver, must generally be accompanied by other circumstances, such as unreasonable length of time, evidencing intent. Thus, the failure to object immediately to a party's unlawful act does not constitute the waiver of a right to bring legal action." 28 Am. Jur. 2d 661–62, Estoppel and Waiver § 195 (2011).

Notwithstanding the defendant's lack of pursuing a finding of contempt until 2011, no evidence or testimony was admitted on which the court could have found that the defendant explicitly or implicitly waived his right to seek reimbursement for their son's extracurricular activities expenses. Rather, the parties testified that the defendant simply never broached the subject of payment with the plaintiff. Accordingly, there was no evidence of waiver, and the court improperly concluded

that the defendant had waived his right to reimbursement for the extracurricular activities expenses.

"Under our well-established law, any claim of estoppel is predicated on proof of two essential elements: the party against whom estoppel is claimed must do or say something calculated or intended to induce another party to believe that certain facts exist and to act on that belief; and the other party must change its position in reliance on those facts, thereby incurring some injury. . . . It is fundamental that a person who claims an estoppel must show that he has exercised due diligence to know the truth, and that he not only did not know the true state of things but also lacked any reasonably available means of acquiring knowledge." (Internal quotation marks omitted.) *Kalinowski* v. *Kropelnicki*, supra, 92 Conn. App. 353. "Estoppel rests on the misleading conduct of one party to the prejudice of the other. In the absence of prejudice, estoppel does not exist." (Internal quotation marks omitted.) *Fischer* v. *Zollino*, 303 Conn. 661, 668, 35 A.3d 270 (2012). "The party claiming estoppel . . . has the burden of proof." Id., 667.

As previously noted, the plaintiff did not claim that the defendant ever told her that she did not need to contribute to the cost of the extracurricular activities in which their son participated. The defendant simply did not ask. Moreover, no evidence was admitted on which the court could have found that the defendant's failure to seek contribution induced her to change her position in any way in reliance on his inactivity. She did not testify regarding whether she exercised due diligence to find out if the defendant wanted her to contribute or if she lacked any reasonably available means of acquiring such information. Accordingly, there was no evidence of estoppel and the court, therefore, improperly concluded that the defense of estoppel

barred the defendant from seeking reimbursement of the fees associated with the extracurricular activities.

The judgment is reversed only as to the defendant's claim for reimbursement of expenses related to extra-curricular activities and the case is remanded with direction to conduct a new hearing on the defendant's motion for contempt as to that claim. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.