******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

## KRZYSZTOF WOLYNIEC *v.* MARLENA WOLYNIEC
### (AC 40292)
### (AC 40436)

Lavine, Alvord and Moll, Js.

*Syllabus*

The plaintiff, whose marriage to the defendant previously had been dissolved, appealed to this court from the judgments of the trial court rendered on several postjudgment motions of the parties. The plaintiff claimed that the trial court improperly ordered that the defendant could continue to reside at a residence owned by the plaintiff in Darien until the plaintiff satisfied an arrearage in unallocated alimony and child support owed to the defendant, and failed to find that the defendant's motion for contempt concerning the arrearage was barred by the equitable doctrine of laches. *Held*:

1. The trial court did not abuse its discretion in permitting the defendant to remain in the Darien residence until ninety days following her receipt of payment in full of the support arrearage owed by the plaintiff; a stipulation incorporated into the parties' dissolution judgment set forth the plaintiff's family support obligations, which unambiguously linked the monetary and residential forms of family support, identified expressly the obligation to provide the Darien residence as alimony and provided that the defendant was relying on her use of the residence in accepting the agreed upon amount of unallocated alimony and child support, and, thus, the court did not err in fashioning its postjudgment remedial order permitting the defendant to remain in the Darien residence as a remedy for the harm caused by the plaintiff's noncompliance with the monetary unallocated alimony and child support provision, and the court's remedial order to effectuate the judgment of dissolution was supported by competent evidence, as the court credited the defendant's testimony that she did not have money to pay for another residence and that she would be able to move out of the Darien residence if the plaintiff paid the arrearage he owed.

2. The plaintiff could not prevail on his claim that the trial court erred in failing to find that the defendant should be barred by laches from recovering the support arrearage: no evidence was admitted from which that court could have found that the plaintiff was prejudiced by the defendant's delay in filing her motion for contempt approximately six years after the plaintiff began reducing his support payments, as the plaintiff's claims of prejudice were premised on an alleged oral agreement between the parties, pursuant to which the plaintiff claimed he took on substantial additional costs for the children's college expenses that he was not obligated to assume, and the plaintiff's assumption of discretionary precollege preparation activity fees for the parties' children pursuant to the alleged oral agreement, for which the defendant testified she also made payments at the insistence of the plaintiff, did not establish prejudice, the plaintiff having presented no evidence that the assumption of the activity fees constituted a change in his position or that the defendant's delay in filing her contempt motion led him to assume such expenses; moreover, the plaintiff's missed opportunity to file a motion for modification with the court, which was occasioned by his own decision to engage in self-help by entering into the alleged oral agreement, did not establish prejudice, as the plaintiff decided to engage in self-help rather than seek the guidance of the court.

Argued December 11, 2018—officially released February 26, 2019

*Procedural History*

Action for the dissolution of a marriage, and for other relief, brought to the Superior Court in the judicial district of Stamford-Norwalk and tried to the court, *Hon. Stanley Novack*, judge trial referee; judgment dissolving the marriage and granting certain other relief; there-

after, the court, *Colin, J.*, granted in part and denied in part the defendant's motion for contempt; subsequently, the court granted in part and denied in part the plaintiff's motion to enforce the dissolution judgment; thereafter, the court denied the plaintiff's motion for contempt, and the plaintiff appealed to this court; subsequently, the court denied the plaintiff's motion to reargue, and the plaintiff appealed to this court. *Affirmed.*

*Krzysztof Wolyniec*, self-represented, with whom, on the brief, were *Tara C. Dugo* and *Norman A. Roberts, II*, for the appellant (plaintiff).

*Opinion*

ALVORD, J. In these consolidated appeals, the plaintiff, Krzysztof Wolyniec, appeals from the judgments of the trial court rendered on several postjudgment motions filed by him and the defendant, Marlena Wolyniec.[1] On appeal, the plaintiff claims that the court erred by (1) ordering that the defendant may continue to reside at the plaintiff's Darien residence until he satisfies his acknowledged arrearage in unallocated alimony and child support,[2] and (2) failing to find that the defendant's motion for contempt as to the arrearage in unallocated alimony and child support was barred by the equitable doctrine of laches. We are not persuaded by either claim and, accordingly, affirm the judgments of the court.

The following facts and procedural history are relevant to our resolution of this appeal. The parties were married on July 3, 1993, and they have two children. On January 30, 2007, the court rendered judgment dissolving the parties' marriage. The judgment incorporated by reference the parties' stipulation of the same date (stipulation).

As to family support, the stipulation provided that the plaintiff, commencing February 1, 2007, was to pay to the defendant unallocated alimony and child support in the sum of $10,000 per month, until her death, remarriage, or until May 30, 2016, which date fell shortly after the parties' younger child reached the age of eighteen. The plaintiff also agreed to purchase a house in Darien (Darien residence) for the use of the defendant and the parties' two children.[3] The defendant agreed to vacate the Darien residence on March 1, 2016, or six months following the date the residence no longer served as the primary residence of the defendant and a minor child, whichever shall occur first.[4] The parties agreed that the plaintiff's "obligation to pay for said house is in the nature of alimony and as such is modifiable." The parties further agreed that "[i]n accepting the amount of unallocated alimony and support as provided for herein, the [defendant] is relying upon the [plaintiff's] securing of this house for her use and the use of the children. Should the [defendant] not have the use of said home for herself and the children, such fact shall be deemed a substantial change in circumstances warranting modification of the unallocated alimony and support herein."

As to the division of marital property, the stipulation provided that each party would retain the property appearing on their respective financial affidavits, the plaintiff would pay to the defendant the sum of $400,000, and the plaintiff would purchase a new Volvo automobile for the defendant.

On May 6, 2016, the defendant filed a motion for contempt, claiming that the plaintiff owed an unallo-

cated alimony and child support arrearage of $202,146.25, and the plaintiff filed an objection. On June 13, 2016, the plaintiff filed a motion for contempt, arguing that the defendant wilfully remained in the Darien residence beyond March 1, 2016, in violation of the express terms of the stipulation incorporated into the dissolution judgment.[5] On the same day, he also filed a motion to enforce the judgment of dissolution; that motion asserted many of the same facts as his motion for contempt and requested that the court order the defendant to vacate the Darien residence.

The court held an evidentiary hearing on the parties' motions on March 7, 2017. At the beginning of the hearing, the parties introduced into evidence an "agreement as to facts at hearing" (agreement). The parties recognized that the dissolution judgment required the plaintiff to pay the defendant $10,000 monthly in unallocated family support commencing in February, 2007, and ending in May, 2016. The parties further agreed that the "dissolution of marriage judgment was never modified by the court." According to the agreement, the plaintiff acknowledged that he owed $122,145.25 in family support arrearage. Attached to the agreement was a yearly summary of family support owed and paid. The parties further agreed that the "defendant was to vacate [the] plaintiff's residence in Darien on March 1, 2016, which she has not done. [The] [d]efendant currently resides in the Darien home." Lastly, the parties agreed that the defendant had paid for three years of tuition, room, and board at Emory University for the parties' older child.[6]

During the hearing,[7] the self-represented plaintiff sought to inquire of the defendant as to whether she was aware that the plaintiff's income had dropped substantially in 2010. In response to the objection of the defendant's counsel on grounds of relevance, the plaintiff represented to the court that the parties had reached, postjudgment, the following oral agreement: "[W]e agreed that I will lower the alimony payment for a period [un]til the older [child] goes to college and then I'll cover all the . . . college costs after the expiration of the agreement. And that was precipitated by the fact that my income dramatically dropped, and I was—otherwise I intended to file for modification." The plaintiff further inquired of the defendant whether it was true that the parties had entered into such an oral agreement in 2010, although he described the terms of the agreement differently, asking whether they had agreed that he would reduce the unallocated support until the older child entered college, at which time he would "return to paying—paying the full amount, and then after the conclusion of the divorce decree I will pay . . . for the last years of the older one's and the full . . . college cost of the younger one."

The defendant gave various answers to questions asking whether such an oral agreement existed, testifying:

"[Y]ou have so many versions of all your agreements through our relationship that . . . I lost track with all your agreements"; "[i]t's difficult to sift through what you say to me. You were promising me lots of things through our . . . marriage and after divorce. I cannot say what is true, what is false"; "[i]t's difficult to say that this is agreement because all our relationship is like I do what you say"; and "[w]e agreed about lots of things that didn't come up as a true, so at the certain moment in my life I stopped paying attention what you say. I just do . . . what is necessary to survive for my kids and me until the moment that I can start working and be independent person, and for my kids to go to college and be independent. Until then—I cannot say that I agreed; you forced me to agree about lots of things."

The defendant testified at the hearing that she did not have much money left and did not have funds to pay for an apartment. She testified that she would be able to move out of the Darien residence if the plaintiff satisfied the support arrearage.

Following the hearing, on March 13, 2017, the court issued three orders. With respect to the defendant's motion for contempt, the court granted it in part and denied it in part. As to the plaintiff's claim of an oral agreement regarding his family support obligation, the court found that "[t]he credible evidence introduced at the hearing is insufficient for the court to find that such an agreement ever existed or, if it did exist, its specific terms." The fact that the defendant waited to file the motion for contempt, despite a period of the plaintiff's failing to pay the family support order in full, led the court to infer that the parties had some discussion that impacted the plaintiff's decision not to pay the full amount of support. Thus, the court found that the plaintiff's noncompliance was not wilful and that the defendant "failed to prove by clear and convincing evidence that the plaintiff wilfully and intentionally violated the alimony order." The court ordered the plaintiff to pay the undisputed family support arrearage of $122,145.25 in monthly installments of $10,000 beginning April 1, 2017. The order was made "without prejudice to either party's right to request a different payment schedule by filing an appropriate motion and current financial affidavits."[8]

The court then granted the plaintiff's motion to enforce the provisions of the judgment and denied his motion for contempt, finding that the plaintiff had failed to prove that the defendant wilfully and intentionally violated the dissolution judgment by failing to vacate the Darien residence by the date set forth in the parties' stipulation incorporated into the dissolution judgment. In denying the plaintiff's contempt motion, the court credited the defendant's testimony as to her financial circumstances and noted that the plaintiff's failure to

comply with the dissolution judgment's family support orders resulted in a substantial support arrearage. The court, to effectuate the judgment of dissolution, ordered that "the defendant shall vacate the premises within ninety days after she receives payment in full from the plaintiff in accordance with the court's ruling on [the defendant's motion for contempt]."[9]

On March 24, 2017, the plaintiff filed a motion to reargue his motion for contempt and to enforce the judgment. On April 3, 2017, while the plaintiff's motion to reargue was still pending, he filed an appeal from the court's ruling on the defendant's motion for contempt. After hearing argument on April 17, 2017, the court denied the motion to reargue on April 24, 2017. On May 12, 2017, the plaintiff filed a separate appeal from the court's rulings on his motions, including the motion to reargue. On February 20, 2018, this court granted the plaintiff's motion to consolidate the two appeals.

I

On appeal, the plaintiff first claims that the court erred in ordering that the defendant may continue to reside in the Darien residence until the plaintiff satisfies his unallocated alimony and child support arrearage. The plaintiff recognizes that the court has the authority to issue remedial orders but contends that the court's order "failed to take into account the defendant's use and occupancy of the Darien Residence." The plaintiff argues: "Without accounting for her use and occupancy of the Darien Residence and crediting the plaintiff with same, the trial court is no longer protecting the integrity of its original orders." Instead, he contends, the remedial support orders put him "in a far worse financial position" and awarded the defendant a windfall. We disagree.

We first set forth applicable principles of law and our standard of review. "In Connecticut, the general rule is that a court order must be followed until it has been modified or successfully challenged. . . . Our Supreme Court repeatedly has advised parties against engaging in self-help and has stressed that an order of the court must be obeyed until it has been modified or successfully challenged." (Citations omitted; internal quotation marks omitted.) *Culver* v. *Culver*, 127 Conn. App. 236, 242, 17 A.3d 1048, cert. denied, 301 Conn. 929, 23 A.3d 724 (2011); see also *O'Brien* v. *O'Brien*, 326 Conn. 81, 97, 161 A.3d 1236 (2017) ("[a] party to a court proceeding must obey the court's orders unless and until they are modified or rescinded, and may not engage in 'self-help' by disobeying a court order to achieve the party's desired end"); *Becue* v. *Becue*, 185 Conn. App. 812, 827,    A.3d    (2018) ("[t]here can be no dispute, our law is quite clear: An order of the court must be obeyed until it has been modified or successfully challenged" [internal quotation marks omitted]).

Additionally, "[c]ourts have in general the power to fashion a remedy appropriate to the vindication of a prior . . . judgment. . . . Having found noncompliance, the court, in the exercise of its equitable powers, necessarily ha[s] the authority to fashion whatever orders [are] required to protect the integrity of [its original] judgment. . . . This is so because [i]n a contempt proceeding, *even in the absence of a finding of contempt*, a trial court has broad discretion to make whole a party who has suffered as a result of another party's failure to comply with the court order." (Citation omitted; emphasis in original; internal quotation marks omitted.) *Pressley* v. *Johnson*, 173 Conn. App. 402, 408, 162 A.3d 751 (2017). "[S]uch court action . . . must be supported by competent evidence." (Internal quotation marks omitted.) *Fuller* v. *Fuller*, 119 Conn. App. 105, 115, 987 A.2d 1040, cert. denied, 296 Conn. 904, 992 A.2d 329 (2010).

"In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. . . . Appellate review of a trial court's findings of fact is governed by the clearly erroneous standard of review. The trial court's findings are binding on this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence in the record to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."[10] (Internal quotation marks omitted.) Id., 115–16.

In the present case, the court properly determined that it had the authority to fashion remedial family support orders following the plaintiff's noncompliance with the stipulation incorporated into the dissolution judgment. See *O'Brien* v. *O'Brien*, supra, 326 Conn. 101. The stipulation set forth the plaintiff's family support obligations, which included both monetary and residential support. As to monetary support, the plaintiff was to pay the defendant $10,000 per month in unallocated alimony and child support. As additional alimony, the plaintiff was to provide residential support in the form of a residence in Darien for the use of the defendant and the parties' children. See *Carasso* v. *Carasso*, 80 Conn. App. 299, 310–11, 834 A.2d 793 (2003) (noting different aspects of alimony obligations, including money payments and obligations to provide insurance), cert. denied, 267 Conn. 913, 840 A.2d 1174 (2004).

In their stipulation, the parties unambiguously linked the monetary and residential forms of family support. In addition to identifying expressly the obligation to provide the Darien residence as alimony, the stipulation further stated that the defendant was relying on her use

of the residence in accepting the agreed upon amount of unallocated alimony and child support. The parties agreed that if she were not to have use of the residence, it would constitute a substantial change in circumstances warranting modification of the monetary portion of the support award. Thus, according to the unambiguous terms of the stipulation, the defendant accepted the residential support at the cost of a reduction in monetary support. Given that the parties themselves had linked the two forms of support in their stipulation, the court did not err in fashioning its post-judgment remedial order permitting the defendant to remain in the Darien residence as a remedy for the harm caused by the plaintiff's noncompliance with the monetary unallocated alimony and child support provision.

Moreover, the court's remedial order to effectuate the judgment of dissolution was supported by competent evidence.[11] See *Clement* v. *Clement*, 34 Conn. App. 641, 646–48, 643 A.2d 874 (1994) ($29,500 award to preserve original judgment's integrity, where plaintiff had failed to make mortgage payments as ordered by trial court resulting in foreclosure and loss of family residence, was supported by undisputed evidence that plaintiff failed to comply with court order). In the present case, the court had undisputed evidence before it that the plaintiff, without seeking a modification of his court-ordered family support obligation, commenced, in 2010, a reduction in the amount of support payments and ultimately accrued an arrearage of $122,145.25. As he conceded during oral argument before this court, such action constituted a violation of the terms of the dissolution judgment.[12] In fashioning its order, the court credited the competent evidence in the form of the defendant's testimony during the hearing that she did not have money to pay for an apartment and that she would be able to move out of the Darien residence if the plaintiff paid the support arrearage.[13]

Accordingly, we conclude that the court did not abuse its discretion in permitting the defendant to remain in the Darien residence until ninety days following her receipt of payment in full of the support arrearage.[14]

## II

The plaintiff's second claim on appeal is that the court erred in failing to find that the defendant should be barred pursuant to the doctrine of laches from recovering the support arrearage owed by the plaintiff. Specifically, he argues that the court had before it evidence of inexcusable delay, in that the plaintiff began reducing his support payments in 2010, and the defendant did not file a motion for contempt until 2016, after the plaintiff had served her with an eviction notice from the Darien residence. He further claims that the court heard evidence of prejudice to the plaintiff as a result of his reliance on an alleged oral agreement between

the parties, in that he refrained from filing a motion for modification of the support orders and assumed additional costs for the children's precollege preparation activities, fees that he was not otherwise obligated to assume. We are not persuaded.

We begin by setting forth legal principles relevant to this claim. "Laches is an equitable defense that consists of two elements. First, there must have been a delay that was inexcusable, and, second, that delay must have prejudiced the defendant. . . . The mere lapse of time does not constitute laches . . . unless it results in prejudice to the defendant . . . as where, for example, the defendant is led to change his position with respect to the matter in question. . . . Thus, prejudicial delay is the principal element in establishing the defense of laches." (Citation omitted; internal quotation marks omitted.) *Cifaldi* v. *Cifaldi*, 118 Conn. App. 325, 334–35, 983 A.2d 293 (2009). "Thus, even if there was an inexcusable delay by the moving party, the court will not find that party guilty of laches if the prejudice to the opposing party was not the result of the moving party. . . . Moreover, [t]he burden is on the party alleging laches to establish that defense." (Citations omitted; internal quotation marks omitted.) *Carpender* v. *Sigel*, 142 Conn. App. 379, 387, 67 A.3d 1011 (2013). "The standard of review that governs appellate claims with respect to the law of laches is well established. A conclusion that a plaintiff has been guilty of laches is one of fact . . . . We must defer to the court's findings of fact unless they are clearly erroneous." (Internal quotation marks omitted.) *Cifaldi* v. *Cifaldi*, supra, 335.

In the present case, the plaintiff did not assert the defense of laches in his objection to the defendant's motion for contempt but did argue, during the hearing that was scheduled approximately nine months after the filing of that objection, that laches barred the defendant's recovery of the arrearage. Although the court recognized in its order that the defendant waited a long time to pursue her motion to collect the arrearage, it did not make this observation in connection with a discussion of the evidence supporting a defense of laches. Rather, the court inferred from the delay that "the parties did have some type of discussion that impacted the plaintiff's decision to not pay the full amount," which inference supported its finding that the plaintiff's noncompliance with the support order was not wilful. Although the court made no express findings of fact with respect to laches, it concluded that "the plaintiff failed to establish any credible defense that would excuse his payment of alimony and he is not, therefore, excused from fulfilling his court-ordered alimony obligation." Thus, we infer from the court's order requiring the plaintiff to pay the support arrearage that the plaintiff did not carry his burden to establish the elements of laches.

After examining the record in the present case, we conclude that no evidence was admitted from which the court could have found that the plaintiff was prejudiced by the defendant's delay in filing her motion for contempt. See *Carpender* v. *Sigel*, supra, 142 Conn. App. 386–87 (noting that trial court had made no factual findings with regard to legal conclusion of laches and reversing on basis that no evidence was presented to show prejudice or that delay in filing motion for contempt was inexcusable). Indeed, both of the plaintiff's claims of prejudice are premised on the alleged oral agreement. The court, however, found the evidence presented insufficient to find that any agreement existed, or if it did exist, its specific terms.

First, the plaintiff argues that he was "prejudiced by his reliance on the [oral] agreement," in that he "took on substantial additional costs for the children's college expenses that he was neither obligated to assume, nor which he would have voluntarily assumed, but for the [oral] agreement." Although the defendant acknowledged during the hearing that the plaintiff had paid for certain college preparatory courses, she also testified that she incurred similar expenses in near equal amounts. Specifically, she testified: "I think that we shared most of those expense[s] you are talking about, because for every your expense you made sure that I am paying . . . for something similar so . . . if it's not fifty/fifty then it would be definitely forty/sixty. I paid a lot of expense[s] for lots of tutoring, lots of courses. When [the older child] was preparing himself for college he was taking courses in Columbia. . . . He was going to Philadelphia. And you always made sure that each time you were contributing to those expenses . . . I would be paying about the same amount. . . . You . . . were very, very particular checking that I am fifty/fifty."

Thus, the plaintiff's assumption of discretionary pre-college preparation activity fees, for which the defendant testified she also made payments at the insistence of the plaintiff, cannot establish prejudice. The plaintiff presented no evidence that the parties' assumption of the activity fees constituted a change in his position or that the defendant's delay in filing her motion for contempt led him to assume such expenses. See *Carpender* v. *Sigel*, supra, 142 Conn. App. 387 (no evidence admitted on which court could have found plaintiff changed her position in reliance on the defendant's actions).

The plaintiff's second argument as to prejudice is that "had the parties not entered into the [oral] agreement, the plaintiff would have filed [a motion] for a modification of the alimony orders seven years prior." As discussed more fully in part I of this opinion, our case law is clear: "[A]n order of the court must be obeyed until it has been modified or successfully chal-

lenged." (Internal quotation marks omitted.) *Culver* v. *Culver*, supra, 127 Conn. App. 242, 243 (court-ordered child support obligation was not modified by parties' subsequent oral agreement that was not made an order of the court); see also *Becue* v. *Becue*, supra, 185 Conn. App. 827 (defendant wilfully engaged in self-help by modifying court-ordered child support without permission of the court). The plaintiff's missed opportunity to file a motion for modification, which was occasioned by his own decision to engage in self-help by entering into an alleged oral agreement with the defendant, likewise cannot establish prejudice. Any conclusion to the contrary would condone the plaintiff's decision to engage in self-help rather than seek the guidance of the court.

The judgments are affirmed.

In this opinion the other judges concurred.

[1] The defendant is not participating in these appeals. On May 21, 2018, this court ordered that the appeals would be considered on the basis of the plaintiff's brief and the record alone unless the defendant filed her brief on or before June 4, 2018, which she failed to do. Accordingly, on June 5, 2018, this court ordered that the consolidated appeals would be considered on the basis of the plaintiff's brief and the record alone.

[2] The plaintiff represented to this court during oral argument that, as of the date of argument, he had not paid any of the family support arrearage that he conceded he owed. When asked if he filed a motion to stay the court's order requiring that he begin paying the arrearage, the plaintiff stated that he had merely filed an appeal. Our case law is well established that filing an appeal from a family support order does not automatically stay the order. See *Schull* v. *Schull*, 163 Conn. App. 83, 99, 134 A.3d 686, cert. denied, 320 Conn. 930, 133 A.3d 461 (2016); Practice Book § 61-11 (c) (no automatic stay for orders of support in certain family matters).

[3] The stipulation's provisions regarding the residence are as follows: "11. The Husband has agreed to purchase a house for the benefit of the Wife and the two minor children. The house is to be in Darien, Connecticut or such other town as the parties may agree. The selection of the house shall be by the mutual consent of the parties and shall be made on or before April 1, 2007. The Wife and the minor children shall have exclusive right to occupy said house. The Purchase price of the house shall not be in excess of $900,000.00 unless the parties otherwise agree. The husband may finance the balance of the purchase in any way that he may elect. The title to the house shall be in the Husband's sole name. The Wife shall acquire no legal or equitable interest in said house. The Wife agrees to cooperate with any financing or refinancing that the husband may elect. The Wife shall sign any documents reasonably required for such financing or refinancing. The Husband shall be solely responsible for all costs associated with said mortgage or refinancing and shall indemnify and hold the Wife harmless from any liability associated with said mortgage, interest and real estate taxes. In accepting the amount of unallocated alimony and support as provided for herein, the Wife is relying upon the Husband's securing of this house for her use and the use of the children. Should the Wife not have the use of said home for herself and the children, such fact shall be deemed a substantial change in circumstances warranting modification of the unallocated alimony and support herein. The Husband's obligation to pay for said house is in the nature of alimony and as such is modifiable. Although in the nature of alimony, the husband's payments associated with the maintenance of said house are not taxable to the Wife and are not [deductible] by the Husband as alimony, although they may be [deductible] under other provisions of the [Internal Revenue Service] code, i.e. second home, investment property or tax payments made by the husband.

"12. The Wife shall be solely responsible for any and all utilities and ordinary maintenance and repair of the home. Ordinary maintenance or repair is defined as any maintenance which is not extraordinary. Extraordinary maintenance or repair is defined as any such expense which exceeds $750.00. The Husband shall pay extraordinary maintenance and repairs to

the home. The Wife shall be responsible for all appliances in the home. The Wife shall not incur any [nonemergency] repair or maintenance expense without notifying the Husband in advance and securing his consent, which consent shall not be unreasonably withheld. The Wife shall not make any capital improvements to the home without the husband's expressed written approval.

"13. The Wife agrees to keep the home in good condition and return it to him in broom clean condition at the termination of her occupancy. The husband shall be entitled to enter the home, with reasonable advance notice to the Wife no less than four times a year to inspect the condition of the home.

"14. The Wife shall vacate the home on March 1, 2016, or six months following the date the home no longer serves as the primary residence of the Wife and a minor child, whichever event shall first occur."

[4] We note that the stipulation required the defendant to vacate the Darien residence *before* the younger child turned eighteen, as conceded by the plaintiff during oral argument before this court.

[5] The plaintiff further claimed that the defendant had failed to pay him any rent on the Darien residence since March 1, 2016, and that her holding over at the residence prevented him from either renting the residence or moving into the residence himself. The plaintiff also argued that he was prevented from obtaining a home equity credit line until such time as he became an occupant of the residence. He sought, among other relief, an order requiring the defendant to vacate the Darien residence, to reimburse the plaintiff the fair market rental value of the residence for the period of March 1, 2016, through the date of her vacatur of the Darien residence, and to reimburse the plaintiff the sum he expended on his own rental from June 1, 2016 through August 31, 2016.

[6] With respect to postsecondary education, the stipulation incorporated into the dissolution judgment stated: "The parties hereby ask the court to retain jurisdiction over the issue of post majority support pursuant to [General Statutes §] 46b-56c." Neither party sought court guidance as to their respective responsibilities for the children's college tuition payments.

[7] Although the court first heard evidence on the defendant's motion for contempt and then turned to the plaintiff's motions for contempt and to enforce the judgment, the court, after hearing no objections from the parties, indicated that it would consider all the evidence in connection with all three motions.

[8] The file reflects no request by the plaintiff to alter the monthly payment amount, and the plaintiff represented to this court during oral argument that he has not made any support arrearage payments pursuant to the court's March 13, 2017 order.

[9] The court denied the plaintiff's additional requests for relief made in his motion to enforce the judgment.

[10] The plaintiff contends that the standard of review is plenary, arguing that "[w]hether the trial court has jurisdiction to allow the defendant to remain in the Darien residence is a question of law and is subject to plenary review." In support, he cites *Rathblott* v. *Rathblott*, 79 Conn. App. 812, 818, 822–23, 832 A.2d 90 (2003), a case in which this court determined that the trial court lacked authority to issue a postjudgment order that certain marital property, which the court had failed to assign at the time of the dissolution, be sold at auction.

In the argument section of his appellate brief, by contrast, the plaintiff recognizes the court's authority to issue remedial orders, and claims that the court "failed to take into account the defendant's use and occupancy of the Darien residence." Such a claim requires us to determine whether the trial court abused its discretion by permitting the defendant to remain in the Darien residence. See *Behrns* v. *Behrns*, 124 Conn. App. 794, 822, 6 A.3d 184 (2010) (noting that trial court had power to vindicate its prior judgment and concluding that court did not abuse its discretion in restricting the defendant's encumbrance of his assets without leave of court, where trial court believed such order was necessary to secure defendant's debt to plaintiff); see also *Gong* v. *Huang*, 129 Conn. App. 141, 154–55, 21 A.3d 474 (court properly exercised discretion in compensating defendant for plaintiff's violation of court order), cert. denied, 302 Conn. 907, 23 A.3d 1247 (2011).

[11] In his brief, the plaintiff alternatively argues that the court's order permitting the defendant to remain in the Darien residence was erroneous because it was a punitive order, an alteration of a terminated alimony order, or a new alimony order issued postjudgment. Because we conclude that the order was of a remedial nature and that the court did not abuse its discretion

in issuing such an order, we reject the plaintiff's alternative arguments.

The plaintiff also argues that "[a]ssuming, arguendo, the divorce judgment orders relating to the Darien residence are in the nature of property orders, the trial court does not have the jurisdiction to modify said orders." Given that the stipulation incorporated into the dissolution judgment expressly designated the plaintiff's obligation to purchase the Darien residence for the use of the defendant and the parties' children as alimony, we reject the premise of the plaintiff's argument.

[12] We further note that the plaintiff's resort to self-help in reducing his support payments rather than using the judicial process to seek a modification is inconsistent with public policy. "Both state and national policy has been, and continues to be, to ensure that all parents support their children and that children who do not live with their parents benefit from adequate and enforceable orders of child support. . . . Child support is now widely recognized as an essential component of an effective and comprehensive family income security strategy. . . . As with any income source, the effectiveness of child support in meeting the needs of children is, of necessity, increased when payments are made regularly and without interruption." (Internal quotation marks omitted.) *Kupersmith* v. *Kupersmith*, 146 Conn. App. 79, 92, 78 A.3d 860 (2013); see also *Sablosky* v. *Sablosky*, 258 Conn. 713, 721, 784 A.2d 890 (2001).

[13] The plaintiff argues that the defendant had an obligation to pay the plaintiff a fair rental value in the form of use and occupancy of the Darien residence following March 1, 2016, and contends that the court erred in failing to account for and credit the plaintiff with her use and occupancy of the residence. We disagree. The court reasonably could have concluded that the defendant's inability to vacate the Darien residence on March 1, 2016, was the direct result of the plaintiff's noncompliance with the family support orders in the dissolution judgment. Therefore, the court's remedial order properly permitted her to remain in the residence in order to protect the integrity of the dissolution judgment.

[14] Given the defendant's history of failing to comply with the dissolution judgment, we also conclude that the court did not abuse its discretion in ordering the defendant to vacate the premises ninety days after the plaintiff pays her the arrearage he owes. As the plaintiff conceded during oral argument before this court, even after resuming what he described as full support payments in 2013, he did not make monthly payments of $10,000 as required by the stipulation incorporated into the dissolution judgment, but rather paid "varying amounts," which added up to the amounts reflected in the parties' agreement of facts entered into evidence during the hearing. Moreover, at the time of the defendant's filing of her motion for contempt in May, 2016, she alleged the plaintiff's arrearage amounted to $202,146.25. The parties agreed at the hearing that the plaintiff satisfied $80,000 of that arrearage in December, 2016, after the defendant had filed her motion for contempt. Finally, as noted in footnote 2 of this opinion, the plaintiff has not paid any amount of the court's remedial support order, which was not stayed.

———————————————